No. 2-09-0179    Filed: 11-19-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| NAPCOR CORPORATION, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 99--MR--407 |
| | ) | |
| JP MORGAN CHASE BANK, NA | ) | |
| Successor as a Result of a Merger With | ) | |
| Bank One NA, Formerly Known as | ) | |
| First Chicago, | ) | Honorable |
| | ) | Judith M. Brawka, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendant, JP Morgan Chase Bank, NA, appeals from a $1,201,158.05 judgment entered on a jury verdict in favor of plaintiff, Napcor Corporation, to which defendant was found liable for fraudulent misrepresentation in the sale of an industrial building to plaintiff. Defendant raises two issues on appeal: (1) whether a judgment notwithstanding the verdict should be entered in its favor; and (2) whether defendant is entitled to a new trial because the verdict was against the manifest weight of the evidence. In support of the second contention, defendant argues that the trial court erred by excluding evidence that plaintiff had agreed to accept the building in its "as is" condition; the trial court erred by refusing to give defendant's jury instruction stating that plaintiff had the burden of proving each element of its claim by clear and convincing evidence; and the amount of the judgment was against the manifest weight of the evidence. We affirm.

## I. BACKGROUND

In 1992, defendant was the trustee of a 72,047-square-foot commercial building (the building) located at 1600 Mountain Street in Aurora. Howard Preis worked in defendant's trust department and was responsible for managing defendant's portfolio of real estate assets held in trust. Preis was also responsible for the upkeep and maintenance of defendant's trust properties, and in 1992, he took over the management of the building. At that time, the building was being leased to Bender Glick, a manufacturing company. The building, however, was not generating any net income and was listed for sale after the roof was fixed. Plaintiff is a holding company that currently maintains title and ownership of the building.

To prepare the building for sale, the building's broker, Paine/Wetzel, provided Preis with an inspection report, which noted that the "roof construction is absorbing water and showing up as leakage" and concluded that the existing roof must be torn off and replaced rather than recovered with a new roof structure. Preis received bids from various roofing contractors who suggested different methods of repairing the roof. After reviewing and evaluating the bids, Preis sent to the members of the trust a letter recommending that the current roof be replaced with "roofing over the existing roof with a modified bitumen application." Preis then accepted the bid of Prewitt Construction, which completed the roof work with the assistance of Glen Prentice. During his deposition, Prentice testified that he told Preis that the existing roof should be torn off, but Preis told him that removing the damaged roof was not within the budget and instructed him to install a new roof over the existing roof. Prentice further testified that he advised Preis that installing a new roof over the existing roof, as opposed to tearing off the old roof, would leave the roof susceptible to wind

uplift. Prentice testified that, once the roof work was completed in August 1994, it was impossible to tell what was under the new roof, i.e., whether the previous roof was torn off or covered.

Shortly after the roof work was completed, Paine/Wetzel sent a letter to Preis advising him that the roof continued to leak. Paine/Wetzel sent an additional letter in September 1995 advising of a "major roof leak" that was detected when the building was shown to a prospective client. Defendant then switched its real estate firm and hired Frain, Camins, & Swartchild (FCS) to market the building for sale. Preis met with FCS agent Kirk Armour to discuss the building and its features. Armour asked Preis if he thought the roof was a tear-off, and Preis responded that he thought it was. Preis approved the listing sheet prepared by Armour that included the comment "New roof in 1994 (tear off)." At trial, Preis testified that the phrase "tear off" had no particular meaning to him and that he did not believe that it was a misrepresentation.

In late 1995, plaintiff was looking for an industrial space to be utilized by a related entity named Oasis Industries, Inc. Oasis Industries manufactured whirlpool baths and had outgrown the space it had previously occupied. Plaintiff's president, William Jahnke, was advised by a real estate agent that the building was on the market. In May 1996, plaintiff submitted an offer for the building, and defendant tendered a counteroffer of $1.309 million and provided a contract. Paragraph 10(e) of that contract provided in relevant part:

"[Plaintiff] hereby represents, that they [sic] have fully examined the real estate described herein and the building improvements thereon and that [plaintiff] knows and is satisfied with the physical condition thereof in all respects and [plaintiff] declares that [plaintiff] is accepting the real estate in its 'AS IS' Condition. [Plaintiff] agrees and admits that no representations or statements have at any time been made by [defendant] or its agents as to the physical

condition or state of repair or the environmental condition of said real estate in any respect, which have not been expressed in this contract." (Emphasis added.)

The emphasized provision of this paragraph was not allowed into evidence because the trial court granted a motion in limine by plaintiff. The contract also provided a 30-day due diligence period. Jahnke inspected and photographed the roof and found no evidence that the roof leaked. He did not, however, retain an additional roofing inspector, claiming that he relied on defendant's representation that the previous roof had been torn off. During the due diligence period, Preis also presented Jahnke with the manufacturer's warranty for the roof, which Jahnke presumed was valid.

The sale of the building from defendant to plaintiff was completed in August 1996. After moving into the building, plaintiff began to experience minor roof leaks, and in March 1998, an entire section of the roof blew off during a storm. In June 1998, another section of the roof similarly blew off. A third "blow off" occurred in April 1999, but it was smaller than the first two. The blown-off areas were initially covered by blue tarps, and permanent repairs were not done until a month or two after the second section blew off. According to Jahnke, in the 10 years since the repairs, the roof continued to leak when seams opened up, and at the time of trial, approximately 20% of the roof had exhibited leaks or deterioration. At trial, plaintiff presented evidence that it had spent $25,158.05 in repairs to the roof since the first damage occurred. Jahnke retained three roofing consultants to determine how the damage occurred: Ryan Barrows of MacBrady Associates; Thomas Gruebnau of Illinois Roofing Consultants; and Rene Dupuis of Structural Research, Inc. In its 1998 report, MacBrady estimated the cost of repairing the roof at $63,000.

Barrows was subsequently retained as plaintiff's expert witness. During trial, Barrows testified that sections of the roof would not have blown off had the original roof been torn off prior

to the installation of the new roof. Barrows also testified that he recognized the standard definition of "tear off" as the removal of an existing roof down to the structural element and the subsequent application of a new roof over that deck. Barrows testified that he performed nine test cuts in the gypsum deck and then weighed the samples when they were wet and after they had dried out. He also performed electrical-capacity and radioactive-isotope testing to determine the level of moisture in the gypsum deck. Barrows testified that he found that more than 80% of the roof exceeded the maximum allowable 20% moisture level. He concluded that the gypsum deck needed to be replaced and estimated that the cost of replacing the roof and the deck was $2,189,730. Finally, Barrows testified that the new roof was not installed pursuant to the manufacturer's specifications.

Defendant retained Ray Norton, a certified roof consultant, as its expert witness. Norton based his opinions on the reports submitted by Illinois Roofing Consultants and Structural Research, Inc., and on his inspection of the roof, which was conducted in 2006. Norton testified at trial that it was apparent to him that the roof was not a tear-off because there were gravel stops and the flashing from the original roof caused bulges in the "re-roof." Norton testified that, based on his estimation, approximately 5% of the total ceiling showed signs of water penetration. Norton further testified that a tear-off roof replacement was unnecessary because the underlying gypsum deck had to be repaired in only a few small spots. However, Norton agreed that the failure to tear off the existing roof violated the manufacturer's specifications for the new roof.

With respect to the manufacturer's warranty of the roof, Preis testified that he had represented to plaintiff that the warranty for the building was valid. He also testified that he understood that the warranty would be void if the roof was not installed pursuant to the manufacturer's specifications.

At the close of the case, defendant submitted to the trial court a proposed jury instruction pursuant to Illinois Pattern Jury Instructions, Civil, No. 800.02B (Illinois Pattern Jury Instructions, Civil, No. 800.02B (2006) (hereinafter, IPI Civil 2006)), which required plaintiff to prove all of the elements of its fraud case by clear and convincing evidence. Plaintiff submitted a jury instruction pursuant to IPI Civil (2006) No. 800.02A, which required plaintiff to prove only the first two elements of fraud by clear and convincing evidence. The trial court tendered plaintiff's instruction and refused defendant's instruction.

The jury returned a verdict in favor of plaintiff. Specifically, the jury concluded that plaintiff had proved by clear and convincing evidence that Preis intentionally, knowingly, or with reckless disregard for the truth made a false statement of material fact that the building came with a "new roof in 1994 (tear off)." The jury also concluded that Preis knowingly, intentionally, or with reckless disregard for the truth made a false statement of material fact that the "new roof" came with a 10-year warranty. The jury found that plaintiff was entitled to damages of $1,201,158.05. Defendant filed a posttrial motion for a judgment notwithstanding the verdict or, alternatively, for a new trial, which the trial court denied. Defendant timely appeals.

## II. ANALYSIS

### A. Judgment Notwithstanding the Verdict

The first issue raised on appeal is whether the trial court erred in denying defendant's motion for a judgment notwithstanding the verdict. Defendant raises several arguments in support of this contention. Initially, defendant argues that the "as is" paragraph of the purchase agreement precluded plaintiff from claiming that it reasonably relied on the alleged misrepresentations. Defendant next argues that plaintiff failed to prove that the alleged misrepresentations were material. According to

defendant, there was no testimony that plaintiff's decision to purchase the building or its price would have been different had plaintiff been aware of the alleged misrepresentations. Finally, defendant argues that plaintiff failed to prove that there was any misrepresentation of fact regarding the warranty, because Preis's representation with respect to the 10-year warranty was a representation of law, not fact. Therefore, it was not a proper basis for a fraud claim.

Whether a judgment notwithstanding the verdict should be entered presents a question of law and is therefore reviewed de novo. Snelson v. Kamm, 204 Ill. 2d 1, 42 (2003). A judgment notwithstanding the verdict should be entered in favor of the moving party where the evidence, viewed in a light most favorable to the opponent, so overwhelmingly supports the movant that no contrary verdict could ever stand. Snelson, 204 Ill. 2d at 42.

With respect to the "as is" language in the purchase agreement, we conclude that that provision did not preclude plaintiff from claiming that it relied on the alleged misrepresentations. In Bauer v. Giannis, 359 Ill. App. 3d 897 (2005), this court addressed the questions of whether an "as is" clause was a defense to a fraud claim and whether such a clause would be admissible on the issue of reliance. The plaintiff in Bauer alleged that the defendants committed fraudulent misrepresentation and fraudulent concealment by concealing that the basement of the defendants' house had flooded before the sale of the house to the plaintiff. Bauer, 359 Ill. App. 3d at 899. The contract for the sale of the house had a rider that contained an "as is" clause. The clause provided:

> " 'Purchaser acknowledges and represents that Purchaser and his representatives have personally examined the Property and Personal Property on at least six occasions and [have] had the Property professionally inspected. Purchaser is fully aware of the condition of the Property and accepts the Property in its "As Is" and "[Where] Is" condition, without any

warranty or representation on the part of the Seller and Purchaser is fully satisfied with the condition of the Property.' " Bauer, 359 Ill. App. 3d at 901.

The plaintiff moved for partial summary judgment, arguing that the "as is" clause was against public policy and therefore unenforceable, and the trial court granted the motion. Bauer, 359 Ill. App. 3d at 901.

On interlocutory appeal, this court held that the "as is" clause was not a defense to claims alleging fraud and that the clause was not admissible regarding the issue of reliance. Bauer, 359 Ill. App. 3d at 899. In reaching this determination, we first referenced section 35 of the Residential Real Property Disclosure Act, which obligates the seller of residential real property to provide a report disclosing material defects of which he or she has knowledge but does not require the seller to undertake any specific inquiry in order to complete the required report. Bauer, 359 Ill. App. 3d at 906, citing 765 ILCS 77/20, 25 (West 2002). This court concluded that, although the plaintiff's claims were based on fraud and not the Residential Real Property Disclosure Act, allowing a seller to ignore his or her obligation under that act and avoid reporting a material defect would "encourage the evils the legislature sought to remedy." Bauer, 359 Ill. App. 3d at 906. We then emphasized our holding by referring to prevailing law in various jurisdictions and stating that our conclusion was "consistent with what we believe is the majority view: that 'as is' language in a real estate sale contract does not shield a seller from liability for fraud." Bauer, 359 Ill. App. 3d at 908-09, citing The S Development Co. v. Prima Capital Management Co., 201 Ariz. 10, 16, 331 P.3d 123, 129 (App. 2001), Wilson v. Century 21 Great Western Realty, 15 Cal. App. 4th 298, 304, 18 Cal. Rptr. 2d 779, 782 (1993), Mackintosh v. Jack Matthews & Co., 109 Nev. 628, 632, 855 P.2d 549, 551 (1993), Stemple v. Dobson, 184 W. Va. 317, 323, 400 S.E.2d 561, 567 (1990), and Richey v.

Patrick, 904 P.2d 798, 803 (Wyo. 1995). We went on to hold that, because the "as is" clause was not a defense to fraud, the clause should not be admitted into evidence because it was not relevant to any element of or defense to the fraud claims. Bauer, 359 Ill. App. 3d at 909.

The reasoning of Bauer is persuasive here. The linchpin of the court's reasoning in Bauer was that a purchaser of real property is entitled to rely on the truthfulness and accuracy of the statements contained in a disclosure report and that an "as is" clause cannot be a defense to a fraudulent misrepresentation. Similar to the plaintiff in Bauer, plaintiff here was entitled to rely on the accuracy of the listing sheet that represented "New Roof in 1994 (tear off)." Therefore, the "as is" clause was not a defense to fraud and did not preclude plaintiff's fraud claim. See Bauer, 359 Ill. App. 3d at 908.

Moreover, defendant's attempts to distinguish the Bauer holding from this case are unavailing. First, defendant argues that the decision was premised on the public policy arising from the Residential Real Property Disclosure Act, which is not applicable here. We recognize that in Bauer we referenced the Residential Real Property Disclosure Act; however, we also expressly noted that the plaintiff's claims were based on fraud and not specifically on that statute. More telling, in Bauer we referred to case law from other jurisdictions in adopting what we deemed the "majority view," that an "as is" clause does not shield a seller from liability for fraud. Bauer, 359 Ill. App. 3d at 908. Our reliance on the majority view adopted in sister states indicates that our determination that an "as is" clause was not a defense to fraud was not premised solely on the underlying policy of the Residential Real Property Disclosure Act. Second, defendant argues that Bauer is distinguishable because that case involved two consumers in a residential real estate transaction, whereas here the transaction involved industrial property being sold to a "sophisticated corporate buyer." This distinction, however, does little to undermine the applicability of Bauer to the present case. The holding in Bauer

was that an "as is" clause in a real estate contract cannot defeat a claim of fraud, and we see no basis for limiting that holding to residential real estate transactions.

Next, we reject defendant's argument that plaintiff failed to establish that the misrepresentation regarding the roof being a "tear off" was material. To establish common-law fraud, a plaintiff must prove: (1) a false statement of material fact; (2) the defendant's knowledge that the statement was false; (3) the defendant's intent that the statement induce the plaintiff to act; (4) the plaintiff's reliance on the truthfulness of the statement; and (5) damages that result from relying on the statement. Gehrett v. Chrysler Corp., 379 Ill. App. 3d 162, 172 (2008). To satisfy the first element, a defendant must make a misrepresentation, the misrepresentation must involve a fact, and the misrepresentation must be material. Hart v. Boehmer Chevrolet Sales, Inc., 337 Ill. App. 3d 742, 751 (2003). The materiality of a misrepresentation is a question of fact (Thompson v. IFA, Inc., 181 Ill. App. 3d 293, 299 (1989)).

Here, although Jahnke testified that he would have gone forward with the deal even if he had known about the true condition of the roof, he also testified that it likely would have had a financial impact on the offer. Based on this testimony, the trier of fact could have concluded that plaintiff would have acted differently had it known the roof was not a tear-off. See Wernikoff v. Health Care Service Corp., 376 Ill. App. 3d 228, 234 (2007) ("A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision regarding the purchase of the product").

Similarly, we also reject defendant's argument that plaintiff failed to establish a material misrepresentation of fact and resulting damages with respect to the roof manufacturer's warranty. The jury heard conflicting testimony with respect to the warranty. Jahnke testified that he was

presented with the warranty and that, although no representation was made regarding its validity, he relied on the warranty and presumed that it was a warranty for the roof. Conversely, Preis testified that he represented to Jahnke that the warranty was valid but that he did not know that it would be voided by Prewitt Construction's installation because it failed to meet manufacturer specifications. It is within the province of the jury to resolve conflicts in the evidence, assess the credibility of witnesses, and decide how much weight should be given to witnesses' testimony. Gehrett, 379 Ill. App. 3d at 172. Here, the jury could have reasonably believed that Jahnke thought the warranty was valid and that he relied on that warranty. Moreover, plaintiff also provided sufficient evidence of damages that resulted from the misrepresentation regarding the warranty. Plaintiff pleaded damages in excess of $50,000. At trial, plaintiff submitted the warranty, which expressly provided that, had the warranty been valid, the manufacturer would have paid "a share, on a pro rata basis (10% per year from year 1 through 10) of all costs, including materials and labor for repair or replacement of the defective membrane." Therefore, plaintiff submitted sufficient evidence for the jury to assess damages resulting from the misrepresentation that the roof came with a valid warranty.

In sum, defendant's motion for a judgment notwithstanding the verdict was properly denied because defendant has failed to establish that, viewing the evidence in a light most favorable to plaintiff, no contrary verdict could stand. See Snelson, 204 Ill. 2d at 42.

### B. New Trial

Defendant next contends that it is entitled to a new trial. In support of this contention, defendant argues that the trial court erred in excluding evidence of the "as is" clause in the purchase agreement, the trial court erred in providing a jury instruction that plaintiff had to prove only the first two elements of fraud by clear and convincing evidence, and the amount of the jury award was

excessive. The determination of whether to grant a new trial rests within the discretion of the trial court, and its ruling will not be disturbed absent an abuse of discretion. Snelson, 204 Ill. 2d at 36. A trial court abuses its discretion when its decision is arbitrary or fanciful or where no reasonable person would adopt the position of the trial court. Favia v. Ford Motor Co., 381 Ill. App. 3d 809, 816 (2008). If a trial court finds that a jury's verdict is against the manifest weight of the evidence, then it should grant a new trial; conversely, a new trial is not warranted where there is sufficient evidence to support the jury's verdict. Snelson, 204 Ill. 2d at 36.

Defendant's request for a new trial is nonmeritorious. First, the trial court did not err by excluding evidence of the "as is" clause. The admissibility of evidence rests within the sound discretion of the trial court, and its decision will not be reversed unless it amounts to an abuse of discretion. Cress v. Recreation Services, Inc., 341 Ill. App. 3d 149, 179 (2003). However, when the trial court's decision to admit evidence is based solely on the interpretation of case law, as here, the question presented is one of law and our review is de novo. Nolan v. Weil-McLain, 233 Ill. 2d 416, 429 (2009).

The record reflects that the trial court relied on Bauer's holding that an "as is" clause is not a defense to fraud. Specifically, the trial court concluded that, pursuant to Bauer, the "as is" clause should not be admitted into evidence because it was not relevant to any element of or defense to fraud. See Bauer, 359 Ill. App. 3d at 906. As discussed in more detail above, Bauer is applicable to this case and the "as is" clause was not a defense to fraud. Therefore, because the trial court correctly applied Bauer in holding that an "as is" clause is not a defense to fraud, its decision to exclude the "as is" clause was also correct.

Second, we reject defendant's assertion that it is entitled to a new trial because the trial court erred by not submitting defendant's jury instruction that plaintiff bore the burden to prove each element of fraud by clear and convincing evidence. Defendant requested that IPI Civil (2006) No. 800.02B be submitted, which provides that a plaintiff has the burden of proving each element of fraud by clear and convincing evidence. The trial court, at plaintiff's request, submitted IPI Civil (2006) No. 800.02A. That instruction provides that a plaintiff bears the burden of proving by clear and convincing evidence that the defendant made false statements of material fact and that the defendant knew the statements were false, believed the statements to be false, or made the statements with reckless disregard of whether they were true or false. However, the plaintiff has the burden of proving that each of the remaining elements is only more probably true than not true. See IPI Civil (2006) No. 800.02A. Defendant asserts that there is no authority explaining the discrepancy between the respective instructions and that there is "no rationale for making only some of the elements subject to the enhanced burden of proof."

Supreme Court Rule 239(a) provides that a trial court shall use the current IPI version when it is "applicable in a civil case, giving due consideration to the facts and the prevailing law, and the court determines that the jury should be instructed on the subject *** unless the court determines that it does not accurately state the law." 177 Ill. 2d R. 239(a). A reviewing court will reverse a trial court's determination about which instruction to give only if the trial court abused its discretion. Schultz v. Northeast Illinois Regional Commuter R.R. Corp., 201 Ill. 2d 260, 273 (2002). Therefore, a trial court has discretion in determining which instruction to give to the jury, and, in determining whether a trial court has abused that discretion, a reviewing court examines the instructions in their entirety to determine whether they fully, fairly, and comprehensively apprised the jury of the relevant

legal principles. Schultz, 201 Ill. 2d at 273-74, citing Palmer v. Mount Vernon Township High School District 201, 269 Ill. App. 3d 1056, 1062 (1995). In addition, even if the trial court gives a faulty instruction, a reviewing court will not reverse unless the instructions clearly misled the jury and prejudice resulted. LaSalle Bank, N.A. v. C/HCA Development Corp., 384 Ill. App. 3d 806, 814 (2008).

In the current matter, the trial court did not abuse its discretion by instructing the jury with IPI Civil (2006) No. 800.02A. The record reflects that the trial court carefully reviewed the facts and prevailing law and that IPI Civil (2006) No. 800.02A accurately states the law. After hearing arguments from both sides, the trial court concluded that, although this court had not explicitly addressed the issue of the burden of proof in a fraud action, it had cited Parsons v. Winter, 142 Ill. App. 3d 354 (1986), "on multiple occasions with approval," which indicated a burden of proof consistent with instruction IPI Civil (2006) No. 800.02A. Moreover, as the committee comments state, IPI Civil (2006) No. 800.02A is consistent with prevailing case law. The job of drafting pattern jury instructions was given to the Illinois Supreme Court Committee on Pattern Jury Instructions, and those instructions should be used unless an instruction is not an accurate statement of law. LaSalle Bank, 384 Ill. App. 3d at 818. Although we recognize that the trial court could have submitted either of two pattern jury instructions because IPI Civil (2006) Nos. 800.02A and 800.02B are both supported by prevailing case law, it was within the trial court's discretion to determine which instruction to use. The record reflects nothing to indicate that the trial court abused its discretion by instructing the jury with IPI Civil (2006) No. 800.02A rather than IPI Civil (2006) No. 800.02B. Accordingly, we reject defendant's argument that a new trial is warranted because the trial court did not instruct the jury with IPI Civil (2006) No. 800.02B.

Finally, defendant's argument that the jury's award of $1.2 million in damages was excessive is similarly unavailing. Defendant argues that the award is "grossly excessive" and that "[i]t is beyond reason that [plaintiff] should be awarded a refund on virtually the entire purchase price for [the] property" when it has been using the building for 10 years. There are two methods for measuring damages resulting from fraudulently concealing defects in property. The first method is granting the plaintiff the benefit of the bargain, i.e., subtracting the value the property actually had at the time of the sale, given the defects, from the value the property would have had at the time of the sale had the defects not existed. Dietrich v. Jones, 172 Ill. App. 3d 201, 209 (1998). The second method considers " 'the cost of fixing the property to make it conform to the condition it would have had without the defects.' " Dietrich, 172 Ill. App. 3d at 209, quoting Posner v. Davis, 76 Ill. App. 3d 638, 645 (1979). A jury's award of damages will not be overturned unless it was against the manifest weight of the evidence. Washington Courte Condominium Ass'n-Four v. Washington-Golf Corp., 267 Ill. App. 3d 790, 822-23 (1994).

In this case, the jury found that defendant fraudulently misrepresented that the building came with a "new roof in 1994 (tear off)." The cost of fixing the defect to make the building conform to the condition it would have been in without the defect is the cost of tearing off the roof and replacing it. Plaintiff presented the expert testimony of Barrows, who opined that the cost of replacing a gypsum deck with a form board and then installing a new asphalt roof over that, in 1998 dollars, amounted to $2,198,730. In addition, Barrows testified that replacing the gypsum deck would cost between $32 and $40 per square foot, or in excess of $2 million. Therefore, because the jury's award fell within the range of estimates given by the expert witnesses, its award was not against the manifest weight of the evidence. See Washington Courte Condominium Ass'n-Four, 267 Ill. App. 3d at 823

-15-

("[A] jury's award should thus be upheld if it falls within the range of estimates given by expert witnesses").

In sum, we conclude that the trial court did not abuse its discretion in denying defendant's motion for a new trial, because the verdict was not against the manifest weight of the evidence. See Snelson, 204 Ill. 2d at 36.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

Affirmed.

ZENOFF, P.J., and McLAREN, J., concur.