2024 IL App (1st) 231305

No. 1-23-1305

First Division
October 15, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

|  |  |  |
|---|---|---|
| BRENDAN MOORE, | ) | Appeal from the |
|  | ) | Circuit Court of |
|  | ) | Cook County. |
| Plaintiff-Appellant, | ) |  |
|  | ) |  |
| v. | ) | No. 2022 M2 001561 |
|  | ) |  |
| NIKO PENDAVINJI and NITRO | ) |  |
| DETERGENT SPECIALISTS, | ) | Honorable |
|  | ) | James L. Allegretti, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE COBBS delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal arises from a small claims action brought by plaintiff-appellant Brendan Moore against defendants-appellees Niko Pendavinji and Nitro Detergent Specialists, regarding his purchase of a used car from defendants. Plaintiff now appeals from the circuit court of Cook County's grant of defendants' motion to dismiss, arguing that the trial court erred in dismissing the complaint where "as is" is not a defense to fraud and the court made improper credibility determinations. For the reasons that follow, we affirm.

¶ 2                                 I. BACKGROUND

¶ 3     On February 4, 2022, Nitro Detergent Specialists and Pendavinji, as president of Nitro Detergent Specialists, sold a 2016 Ford Transit cargo van to plaintiff for $28,500. On May 13, 2022, plaintiff filed a small claims complaint asserting claims of fraud against defendants as related to the sale.

¶ 4     On December 8, 2022, plaintiff filed a second amended complaint, alleging common law fraud of misrepresentation and fraudulent concealment against each defendant. The complaint set forth the following.

¶ 5     In January of 2022, plaintiff saw the van advertised online. While negotiating the purchase of the van, plaintiff asked Pendavinji for any pictures of the van showing rust or damage. Pendavinji responded that there were no signs of rust on the van, and he sent pictures of the van that did not show any body damage.[1] Plaintiff also asked about the service history of the van, and Pendavinji responded that the service history did not show anything outside of normal wear and tear. Plaintiff later traveled to Illinois and test-drove the van. He did not notice any signs of damage from an accident "because the damage was apparently covered up by the dirt on the outside of the van and insulation/trash inside the van." Plaintiff alleged that "[i]n reliance on Defendant's representations and concealments, [he] bought the van." Plaintiff subsequently discovered that the van had been in a prior accident, requiring several thousand dollars in repairs.

¶ 6     As to both claims, plaintiff alleged that defendants "knowingly engaged" in fraudulent misrepresentation and concealment by "[f]alsely stating that the van was not in a prior accident by making non-verbal representation of no accident damage by sending a censored set of photographs,

---

[1]The alleged messages and pictures were not attached to the complaint as exhibits.

and falsely stating that the van's service history showed nothing out of the ordinary[.]" He further alleged that defendants were "under a duty not to lie and to disclose to [p]laintiff the true facts" and "had he known the true facts about the nature of the van, he would not have bought the van."

¶ 7      Attached to the complaint were the motor vehicle bill of sale and an estimate from Roger's Auto Body Inc. Both parties' signatures appear on the bill of sale, and it contains a provision stating that the parties "agree that the property described *** shall be sold by the Seller, and purchased by the Buyer, on an 'as is' basis and in an 'as is' condition, with no express or implied guaranties or warranties regarding the above-described property." It also provided that the bill of sale constituted the only agreement between the parties and any other agreements shall have no force and effect. The estimate showed that repair costs would be $9781.73.

¶ 8      On January 1, 2023, defendants filed a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)). Therein, defendants argued that the trial court should dismiss the complaint under sections 2-1005 and 2-615 of the Code (*id.* §§ 2-1005, 2-615) because plaintiff purchased the car on an "as-is" basis and in an "as-is" condition and, thus, plaintiff accepted all liability for the motor vehicle as of the date of sale. Defendants further contended that "no false representation occurred in this case" and "[n]o statement was made that the car was accident-free." As to plaintiff's claim of fraudulent concealment, defendants claimed that they did not have a "duty to speak" or "to make disclosures," especially as this was a private sale not involving merchants. Additionally, defendants contended that plaintiff had a duty to reasonably inspect the van and plaintiff had more than sufficient opportunity to inspect or to inquire as to the condition of the van. Finally, defendants asserted that plaintiff did not file a counter-affidavit to the affidavit included in defendants' prior motion to dismiss and, therefore, defendants' affidavit went unchallenged.

¶ 9 Attached to the motion was an affidavit from Pendavinji, who averred the following. Defendants bought the van used in 2019. In January 2022, plaintiff sent a text message to Pendavinji, after seeing the van advertised on Craigslist, and expressed interest in purchasing it. Pendavinji advised plaintiff that the van was available. Upon plaintiff's request, he sent plaintiff the VIN number and a copy of the title for the van. Pendavinji sent plaintiff several pictures of the van and advised plaintiff that he could inspect and test-drive the van. Plaintiff asked Pendavinji if he could have a mechanic inspect the van, to which Pendavinji assented; however, plaintiff never had a mechanic inspect the van. Pendavinji provided plaintiff with more pictures, and plaintiff stated that he wanted to purchase the van and traveled to Illinois to do so. Before purchasing the van, plaintiff drove it and inspected it. They agreed that the van was being sold "as is," and Pendavinji prepared the bill of sale, which both parties signed. A month later, plaintiff sent Pendavinji a text message regarding "some body repairs to the driver side rear section of the van" and "some concerns about safety and quality of the repairs." Finally, Pendavinji averred that plaintiff never asked about the van being in an accident.

¶ 10 On April 17, 2023, plaintiff filed a response, arguing that, under Illinois law, "as is" is not a defense to fraud, the duty to speak arises where one party has superior knowledge, and a party's negligence for failing to inspect is not a defense to fraud. Further, plaintiff asserted that Pendavinji's affidavit did not go "unchallenged," where plaintiff attached his own affidavit in his previously filed response to the earlier motion for summary judgment. Finally, plaintiff argued that "sending censored photographs and stating that the service history did not show anything outside of normal wear and tear" constituted fraudulent acts.

¶ 11 Attached to the response was plaintiff's affidavit, averring that he specifically asked Pendavinji for pictures showing any areas of rust, and Pendavinji responded that there were no

signs of rust and did not send any photographs where the damage was visible. He further averred that, during his test-drive, the damage was "apparently covered up by the dirt on the outside of the van and insulation/trash inside the van." Finally, he averred that he requested the service history for the van and Pendavinji informed him that there was nothing outside of normal wear and tear.

¶ 12    On May 11, 2023, defendants filed a reply. In addition to reasserting their prior arguments, defendants argued that plaintiff had not "contradicted a single fact in Pendavinji's affidavit" and the integration clause in the bill of sale also prohibited plaintiff from arguing fraud.

¶ 13    Attached was a rebuttal affidavit from Pendavinji, averring that plaintiff never asked about signs of rust and Pendavinji never claimed that there was no rust on the van. Additionally, he averred that plaintiff never asked about the service history, plaintiff asked about the maintenance of the van regarding oil changes, and Pendavinji never stated that there was nothing wrong with the van outside of normal wear and tear. Finally, Pendavinji averred that he washed the van before plaintiff inspected it, and he denied sending censored pictures to plaintiff.

¶ 14    On June 27, 2023, a hearing was held on defendants' motion. A bystander's report was prepared and approved by the trial court, and it provided the following information:

> "Both counsel appearing by Zoom, and both counsel indicating that they stand on their briefs (inviting the trial court to ask questions, if any). The Court stated that the matter was uncomplicated.
>
> The Court then ruled, stating 'I can't get past "as is." ' The presence of the 'as is' disclaimer was a reason articulated by the Court for finding that Plaintiff failed to state his causes of action.
>
> As a result, the Court dismissed Plaintiff's Second Amended Complaint with prejudice. The Court also stated that Plaintiff personally inspected the vehicle, declined an

opportunity to have it inspected by a mechanic, test drove it, and then drove it to his home state. He claimed the vehicle was dirty and that is why he could not see the damage. The Court did not believe Plaintiff's affidavit and this is a small claims case. For the above reasons, the Court dismissed Plaintiff's Complaint with prejudice."

¶ 15     The same day, the court entered a written order granting defendants' motion to dismiss with prejudice.

¶ 16     This appeal followed.

¶ 17                                II. ANALYSIS

¶ 18     We initially note that defendants, as appellees, have not filed a responsive brief in this appeal. Generally, a reviewing court will not act as an advocate for an appellee who fails to file brief. *First National Bank of Ottawa v. Dillinger*, 386 Ill. App. 3d 393, 395 (2008). Because the record is simple and the issue on appeal is not complex, we will consider the merits of the appeal on plaintiff's brief only. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 19     On appeal, plaintiff argues that the trial court erred in dismissing the second amended complaint, where "as is" and other contractual defenses are not a defense to fraud and, thus, the court should not have given that contractual language "conclusive effect" as to plaintiff's claims of fraudulent misrepresentation and fraudulent concealment. Additionally, plaintiff contends that the trial court made improper credibility determinations and, thus, the standard of review for summary judgment motions was misapplied.

¶ 20     A section 2-619.1 motion allows for a combined motion to dismiss under sections 2-615 and 2-619 (735 ILCS 5/2-615, 2-619 (West 2022)), as well as motions for summary judgment under section 2-1005 (*id.* § 2-1005). *Id.* § 2-619.1 (West 2022); *Johnson v. Matrix Financial*

*Services Corp.*, 354 Ill. App. 3d 684, 688 (2004). A section 2-615 motion to dismiss considers only the facts on the face of the pleadings, whereas a section 2-1005 summary judgment motion goes beyond the pleadings to decide whether the case presents an issue of fact. *Reynolds v. Jimmy John's Enterprises, Inc.*, 2013 IL App (4th) 120139, ¶ 52. A dismissal pursuant to section 2-615 is reviewed *de novo* (*Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 15), as is an order granting summary judgment pursuant to section 2-1005 (*Robinson v. Village of Sauk Village*, 2022 IL 127236, ¶ 16). This means that "we perform the same analysis a trial court would perform." *Watson v. Legacy Healthcare Financial Services, LLC*, 2021 IL App (1st) 210279, ¶ 29. When conducting *de novo* review, "we may affirm the trial court's judgment on any basis in the record, regardless of whether the court relied on that basis or whether its reasoning was correct." *Grassroots Collaborative v. City of Chicago*, 2020 IL App (1st) 192099, ¶ 21. In the case before us, the trial court did not explicitly state upon which section of the Code its dismissal of plaintiff's second amended complaint was based. As such, we begin our review with section 2-615.

¶ 21    As stated, a section 2-615 motion attacks defects in the pleading. 735 ILCS 5/2-615 (West 2022). This motion asks whether the facts alleged in the complaint—viewed in the light most favorable to the plaintiff, and taking all well-pleaded facts and all reasonable inferences that may be drawn from those facts as true—are sufficient to state a cause of action upon which relief may be granted. *Reynolds*, 2013 IL App (4th) 120139, ¶ 25. Stated another way, "[a] cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *New Holy Temple Missionary Baptist Church v. Discount Inn, Inc.*, 371 Ill. App. 3d 443, 445 (2007). Further, a reviewing court should disregard conclusions of law or fact unsupported by specific factual

allegations. *Mercado v. S&C Electric Co.*, 2023 IL App (1st) 220020, ¶ 12. Finally, evidentiary material, such as affidavits, may not to be considered in ruling on a section 2-615 motion to dismiss. *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 476 (1991).

¶ 22    Plaintiff's second amended complaint alleged claims of fraudulent misrepresentation and fraudulent concealment against each defendant. Plaintiff argues that his complaint was improperly dismissed as a result of the "as is" language in the bill of sale. We address this argument first.

¶ 23    Generally, the term "as is" is understood to mean that the buyer is purchasing the goods in its present condition with whatever faults it may possess. *Lake Bluff Heating & Air Conditioning Supply, Inc. v. Harris Trust & Savings Bank*, 117 Ill. App. 3d 284, 292 (1983). Under the Uniform Commercial Code, the term "as is" disclaims all implied warranties of merchantability. 810 ILCS 5/2-316(3)(a) (West 2022). However, plaintiff does not claim breach of warranty but common law fraud. In his brief, plaintiff claims that "Illinois authority indicates that an 'as is' disclaimer is irrelevant to any issue in cases of fraud." See *Mother Earth, Ltd. v. Strawberry Camel, Ltd.*, 72 Ill. App. 3d 37, 52 (1979) ("[T]he terms of any written contract executed in conjunction with fraud are irrelevant to a cause of action grounded not in contract but in tort[.]"); *Eisenberg v. Goldstein*, 29 Ill. 2d 617, 621 (19634) ("One who by misrepresentation has induced another to act to his prejudice cannot relieve himself of liability by a mere disclaimer thereof in advance ***."). These cases, although not recent, certainly lend credence to plaintiff's argument.

¶ 24    Plaintiff also relies on the more recent case of *Napcor Corp. v. JP Morgan Chase Bank, NA*, 406 Ill. App. 3d 146, 153 (2010), which largely relied on the reasoning of *Bauer v. Giannis*, 359 Ill. App. 3d 897 (2005), in finding that, in an industrial property sales contract, an "as is" clause "cannot defeat a claim of fraud." In *Bauer*, the plaintiff alleged that the defendants' house had flooded prior to the sale of the house to the plaintiff. 359 Ill. App. 3d at 899. The contract

contained a clause stating that the plaintiff was accepting the property in its "as is" and "where is" condition. *Id.* at 901. On interlocutory appeal, the Second District of this court held that the "as is" clause was not a defense to claims alleging fraud and that the clause was not admissible as to the issue of reliance. *Id.* at 899. The court reasoned that "a purchaser is entitled to rely on the truthfulness, accuracy, and completeness of the statements" in a disclosure report, and the defendants should not be able to obtain a waiver of their obligation to disclose material defects by including "as is" language in the contract. *Id.* at 906. In citing to a number of cases from other jurisdictions, the court stated that its conclusion was consistent with the majority view "that 'as is' language in a real estate contract does not shield a seller from liability for fraud." *Id.* at 908-09.

¶ 25    In the court below, defendants argued that *Bauer* is distinguishable because it involved a sale of real property and there was a statutory duty to complete a truthful disclosure report, neither of which is at issue here. We recognize that *Bauer* appeared to confine its holding to residential real estate contracts (*id.* at 908-09) and the court in *Napcor*, where industrial real estate was at issue, stated that there was no basis to limit *Bauer*'s holding to "*residential* real estate transactions" (emphasis added) (*Napcor*, 406 Ill. App. 3d at 153). As such, neither of these expressly expanded the rule to apply to any type of contract.

¶ 26    Nonetheless, we disagree that this rule should be restricted to real property actions, and we find support for our conclusion in *CNC Service Center, Inc. v. CNC Service Center, Inc.*, 731 F. Supp. 293, 302 (N.D. Ill. 1990). There, the buyer asserted a claim of common law fraud against the seller, alleging that the seller made misrepresentations that induced the buyer to enter in the business purchase agreement. *Id.* at 295. The magistrate judge found that, as a matter of law, the "as is" clause in the agreement prevented the buyer from reasonably relying on the misrepresentations. *Id.* The federal district court, applying Illinois law, reversed, finding that the

"as is" clause in the agreement was ineffective where a "[the buyer] [was] not alerted to the alleged fraud simply by reading the terms of the document" because "[the seller] had concealed material facts that rendered all the independent investigation meaningless." *Id.* at 302. Thus, where the fraud cannot be discovered simply by reading the contract, the "as is" language cannot be a defense to fraudulent misrepresentations designed to induce the party to execute the contract.

¶ 27    Our conclusion is further supported by decisional law from countless other jurisdictions that have held, generally, that the contractual language of "as is" does not preclude a claim of fraud. See *Wagner v. Rao*, 885 P.2d 174, 176 (Ariz. Ct. App. 1994) ("[T]he words 'as is' in a contract do not deprive a buyer of the right to prove fraud or misrepresentation inducing execution of the contract."); *D&M Jupiter, Inc. v. Friedopfer*, 853 So.2d 485, 489 (Fla. Dist. Ct. App. 2003) ("[W]here there is fraudulent inducement of a contract, the fraudulent misrepresentation vitiates every part of the contract, including any 'as is' clause."); *Slusher v. Jack Roach Cadillac, Inc.*, 719 S.W.2d 880, 882 (Mo. Ct. App. 1986) (finding that the "as is" clause in the contract was "not a defense to a claim of fraud" alleged in the sale of a used van); *Leavitt v. Stanley*, 571 A.2d 269, 270 (N.H. 1990) (stating that the term "as is" does not relieve the seller of liability for fraud); *Murray v. D&J Motor Co.*, 1998 OK Civ App 69, 958 P.2d 823, 830 (Okla. Civ. App. 1998) (stating that fraudulent misrepresentations "concerning the condition, value, quality, characteristics or fitness of the goods" could render an "as is" clause "unreasonable and ineffective"); *Maybee v. Jacobs Motor Co.*, 519 N.W.2d 341, 344 (S.D. 1994) (in a case involving the sale of a used car, stating "[a]lthough 'as is' clauses place the risk upon the buyer to accept the product with all its faults, this does not grant the seller a license to mislead the buyer or conceal facts"); *Godwin Aircraft, Inc. v. Houston*, 851 S.W.2d 816 (Tenn. Ct. App. 1992) ("As is" language in contract for sale of private airplane did not preclude buyer's recovery from seller based on

seller's fraudulent representation that the airplane was airworthy); *George Robberecht Seafood, Inc. v. Maitland Bros. Co.*, 255 S.E.2d 682, 683 (Va. 1979) ("While *** contracting parties may waive their contractual rights *** or limit certain liabilities, a 'false representation of a material fact, constituting an inducement to the contract, on which the purchaser had a right to rely, is always ground for rescission of the contract by a court of equity.' " (quoting *Wilson v. Carpenter*, 21 S.E. 243, 244 (Va. 1895))); *Traders Bank v. Dils*, 704 S.E.2d 691, 696 (W. Va. 2010) (Fraud is "recognized to be an exception to the contractual language typically found in an integration or merger clause which seeks to limit one party's liability to the other.").

¶ 28 The rationale behind this rule is that, if the seller induces the buyer to execute a written contract through fraud, the contract is invalid and the buyer seeking to rescind the contract is not bound by its terms. *Wagner*, 885 P.2d at 176; see *CNC Service Center*, 731 F. Supp. at 301 (Fraud in the inducement "would invalidate the contract."). We find this reasoning persuasive and conclude that "as is" contractual language does not preclude a claim of fraud if it resulted in the inducement to execute a contract, regardless of whether real estate is involved. Aptly explained by an Oklahoma court: "To hold otherwise would allow a seller to profit from his fraud and to be effectively granted a license to mislead or conceal facts." *Murray*, 1998 OK Civ App 69, 958 P.2d at 830.

¶ 29 Based on the foregoing, we agree with plaintiff that the contractual phrase "as is" is not a defense to fraud and should not have had "conclusive effect" on his complaint. Plaintiff requests that we reverse the trial court's dismissal because it improperly considered that contractual language in ruling in favor of defendants; however, our review is *de novo*, and we may affirm on any basis or ground appearing in the record. See *Potek v. City of Chicago*, 2022 IL App (1st) 211286, ¶ 31. Upon reviewing the pleadings, we conclude that the trial court's dismissal was

nonetheless proper under section 2-615, where plaintiff failed to state a cause of action upon which relief may be granted as to both fraudulent misrepresentation and fraudulent concealment.

¶ 30    "The elements of common law fraud are (1) false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance on the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 648 (2001) (citing *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (1996)). Further, "the reliance by the other party must be justified." *Soules v. General Motors Corp.*, 79 Ill. 2d 282, 286 (1980). "There is a high standard of specificity required for pleading claims of fraud." *Cwikla v. Sheir*, 345 Ill. App. 3d 23, 31 (2003). "A successful common law fraud complaint must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations[,] and to whom they were made." *Connick*, 174 Ill. 2d at 496-97. The elements of fraud must be proven by clear and convincing evidence. *In re Application of Rosewell*, 106 Ill. 2d 311, 318-19 (1985).

¶ 31    As to fraudulent misrepresentation, we conclude that plaintiff did not allege a false statement of material fact in his second amended complaint. That element consists of three requirements: "the defendant (1) must make a misrepresentation, (2) it must involve a fact, and (3) the misrepresentation must be material." *Miller*, 326 Ill. App. 3d at 649.

¶ 32    Here, plaintiff alleged that defendants "knowingly engaged" in fraudulent misrepresentation by "[f]alsely stating that the van was not in a prior accident by making non-verbal representation of no accident damage by sending a censored set of photographs, and falsely stating that the van's service history showed nothing out of the ordinary[.]" As we read these

allegations, defendants made no statements either that the van was accident-free or that any repairs had been done on the van. Additionally, service history typically relates to the general maintenance of a vehicle and not to repairs as related to accidents. Thus, we do not consider defendants' alleged response to be a misrepresentation regarding prior accidents. Finally, plaintiff did not include these allegedly "censored" photographs and, thus, we cannot say that they constituted a misrepresentation as to the condition of the van. As such, where no affirmative representation was made, the facts as alleged in the second amended complaint fail to support a claim under fraudulent misrepresentation.[2] We now turn to plaintiff's claim of fraudulent concealment.

¶ 33    "In order to state a claim for fraudulent concealment, a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Connick*, 174 Ill. 2d at 500; see *Warren Chevrolet, Inc. v. Bemis*, 197 Ill. App. 3d 680, 684 (1990) ("[F]raud may also consist of the omission or concealment of a material fact if accompanied by the intent to deceive under circumstances which create the opportunity and duty to speak."). There are two situations where a duty to disclose would arise: (1) where the plaintiff and the defendant are in a fiduciary or confidential relationship and (2) where the defendant is placed in a position of influence and superiority as a result of the plaintiff's trust and confidence. *Connick*, 174 Ill. 2d at 500. A position of superiority "may arise by reason of friendship, agency, or experience." *Id.* A failure to establish a fiduciary or special relationship, giving rise to a duty to speak, is fatal to a claim of fraudulent concealment. *Hassan v. Yusuf*, 408 Ill. App. 3d 327, 345 (2011).

---

[2]To the extent that there is also a question as to whether plaintiff's complaint adequately alleged the element of justifiable reliance, where he had the opportunity to have a mechanic inspect the van and he test-drove and inspected the van himself, we note that several Illinois courts have stated that justifiable reliance is a question of fact to be determined by the trier of fact, not by the trial court as a matter of law. See *Cwikla*, 345 Ill. App. 3d at 31 (citing cases).

¶ 34 There is nothing in plaintiff's second amended complaint to suggest that defendants had a duty to speak under the circumstances in this case. The complaint merely alleges that defendants were "under a duty not to lie and to disclose to [p]laintiff the true facts" without setting forth any specific facts to support this conclusion. See *Small v. Sussman*, 306 Ill. App. 3d 639, 646 (1999) (conclusory allegations cannot substitute for well-pleaded facts). This is not sufficient for the specificity required of fraud claims. See *Ash v. PSP Distribution, LLC*, 2023 IL App (1st) 220151, ¶ 22 (stating that there is a "high standard of specificity for claims of common-law fraud"). Further, "[t]he mere fact that business transactions occurred or that a contractual relationship existed is insufficient to support" a finding of a fiduciary relationship. *State Security Insurance Co. v. Frank B. Hall & Co.*, 258 Ill. App. 3d 588, 597 (1994). Nothing in the complaint suggests that the parties' relationship was anything more than buyer and seller of goods sold via the Internet. Because plaintiff failed to allege a duty to disclose material facts, we conclude that plaintiff's allegations as to fraudulent concealment were insufficient to state a cause of action. See *Connick*, 174 Ill. 2d at 501. Accordingly, plaintiff's second amended complaint did not contain specific factual allegations, setting forth claims of fraudulent misrepresentation or fraudulent concealment, and was properly dismissed.

¶ 35 Because we have found that the trial court correctly dismissed the complaint, we need not address the motion for summary judgment pursuant to 2-1005. We nonetheless note in passing that, at the summary judgment stage, it is not appropriate for the trial court to address the credibility of competing affidavits. See *Schulenburg v. Rexnord, Inc.*, 254 Ill. App. 3d 445, 451 (1993) ("[T]he credibility of a witness is a question for the trier of fact to resolve, not a matter to be decided on a motion for summary judgment."); see *Gatlin v. Ruder*, 137 Ill. 2d 284, 294 (1990) (on a motion for summary judgment, "[a] court cannot decide factual disputes as a matter of law").

Thus, although it does not affect our outcome here, we conclude that the trial court erred in considering the credibility of the affiants.

¶ 36                                    III. CONCLUSION

¶ 37     For the reasons stated, we affirm the judgment of the circuit court.

¶ 38     Affirmed.

---

*Moore v. Pendavinji*, 2024 IL App (1st) 231305

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2022-M2-001561; the Hon. James L. Allegretti, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Dmitry N. Feofanov, of ChicagoLemonLaw.com, P.C., of Lyndon, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | No brief filed for appellees. |

---