2025 IL App (1st) 241333

First District
Third Division
June 18, 2025

No. 1-24-1333

|  |  |  |
|---|---|---|
| | ) | |
| BMO BANK N.A., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | Appeal from the Circuit Court |
| v. | ) | of Cook County. |
| | ) | |
| JAMES ZBROSZCZYK; MIDLAND FUNDING LLC; | ) | No. 2023 CH 08578 |
| and UNKNOWN OWNERS AND NONRECORD | ) | |
| CLAIMANTS, | ) | The Honorable |
| | ) | William B. Sullivan, |
| Defendants | ) | Judge Presiding. |
| | ) | |
| (James Zbroszczyk, | ) | |
| Defendant-Appellee). | ) | |
| | ) | |

JUSTICE REYES delivered the judgment of the court, with opinion.
Presiding Justice Lampkin and Justice D.B. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1   The instant appeal arises from the dismissal of a foreclosure complaint filed by plaintiff BMO Bank N.A. against defendant James Zbroszczyk. Plaintiff filed the foreclosure complaint in the circuit court of Cook County in October 2023, and defendant sought dismissal pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2022)), claiming that the statute of limitations had passed where the last payment on any indebtedness occurred more than 10 years prior to the filing of the foreclosure complaint. The circuit court granted the motion to dismiss, and plaintiff now appeals. For the reasons set forth below, we affirm.

¶ 2                                    BACKGROUND

¶ 3                      *Mortgage and Equity Line Credit Agreement*

¶ 4         On February 18, 2008, plaintiff[1] and defendant executed an "Equity Line Credit Agreement and Disclosure" (the agreement), secured by a mortgage on a home in Chicago. The agreement provided for a revolving line of credit, up to a credit limit of $100,000, with the term of the agreement expiring on February 22, 2018. During the term of the agreement, defendant would be entitled to request "credit advances" up to the amount of the credit limit, which would generally be honored by plaintiff, and defendant would be permitted to "borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit." Upon receipt of credit advances, periodic finance charges would immediately begin accruing on the amount advanced. The finance charges would be calculated using an adjustable rate based, in part, on the prime rate published in the *Wall Street Journal*. If there was a balance owing on the credit line account, or any other account activity, plaintiff would issue a periodic statement, which would include, "among other things, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your 'Previous Balance,' and your 'New Balance,' " in addition to identifying the minimum payment owed during the billing period and the due date.

¶ 5         The agreement provided that "You promise to pay [plaintiff], or order, the total of all credit advances and FINANCE CHARGES, together with all costs and expenses for which you are

---

[1]Plaintiff was named Harris N.A. at the time, which later became BMO Harris Bank N.A., before its current name of BMO Bank N.A. See Fed. Deposit Ins. Corp., BankFind Suite, https://banks.data.fdic.gov/bankfind-suite/bankfind/details/16571 (last visited June 10, 2025) [https://perma.cc/67UQ-YFQE]; BMO, *Our Legal and Brand Name are Changing* (Aug. 24, 2023), https://about-us.bmo.com/our-legal-and-brand-name-are-changing [https://perma.cc/W9MG-TV6K].

responsible under this Agreement or under the 'Mortgage' which secures your Credit Line." The agreement set forth the following payment provision:

> "*Minimum Payment.* Your 'Regular Payment' will equal the amount of your accrued FINANCE CHARGES. You will make 119 of these payments. You will then be required to pay the entire balance owing in a single balloon payment. If you make only the minimum payments, you may not repay any of the principal balance by the end of this payment stream. Your payments will be due monthly. Your 'Minimum Payment' will be the Regular Payment, plus any amount due and all other charges. An increase in the ANNUAL PERCENTAGE RATE may increase the amount of your Regular Payment. You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement."

¶ 6        The agreement also included a provision indicating that, if defendant failed to satisfy the repayment terms of the agreement, plaintiff "can terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment." The mortgage similarly provided that if defendant failed to satisfy the repayment terms of the agreement, upon that failure "and at any time thereafter," plaintiff "shall have the right at its option without notice to [defendant] to declare the entire Indebtedness immediately due and payable."

¶ 7                                *Communications with Defendant*

¶ 8        The record contains evidence of three letters sent by plaintiff to defendant.[2] First, on August 27, 2020, plaintiff sent defendant a letter indicating that the servicing of his loan would

---

[2]These letters were attached to defendant's motion to dismiss. On the same day he filed the motion to dismiss, defendant also propounded discovery requests seeking, in part, "[a]ll notices, demands and statements sent to Defendant and relating to the loan sued upon," but plaintiff provided no additional documentation, either in the form of discovery responses or in connection with the briefing on the motion to dismiss.

be transferred to Dovenmuehle Mortgage, Inc., which would "service your loan in BMO's name." This letter did not contain any information as to the loan balance or any outstanding payments which were owed.

¶ 9    Next, on July 28, 2022, plaintiff sent defendant another letter, indicating that plaintiff would resume the servicing of the loan. Plaintiff further indicated—in bold, all-caps typeface—that, "[i]f you do nothing or speak to us about this debt, we will not sue you to collect it. This is because the debt is too old. But if you make a payment or acknowledge in writing that you owe this debt, then we can sue you to collect it. Although we may not sue you personally, the lien remains intact and BMO Harris Bank, N.A. still holds a security interest in the property." As with the previous letter, this letter did not contain any information as to the loan balance or any outstanding payments which were owed.

¶ 10    Finally, on August 22, 2022, plaintiff sent defendant a "loan delinquency notice," which it indicated was a "first notice." The notice stated that "[p]ayment has not been received on your above referenced account and is now past due. Please remit the total amount past due shown below." The notice then set forth the following:

> "Past Due Date: 08/26/13
>
> Annual percentage rate: 0.0000001
>
> Principal past due: 99,973.28
>
> Finance charge past due: 0.00
>
> Other past due charges: 0.00
>
> Unpaid late charges: 0.00
>
> Total amount past due: 99,973.28"

¶ 11                                              *Foreclosure Complaint*

¶ 12           On October 4, 2023, plaintiff filed a complaint to foreclose mortgage, alleging that defendant had failed to pay the outstanding indebtedness by the agreement's maturity date of February 22, 2018, and that, as of September 11, 2023, the principal balance was $99,973.28, plus interest, fees, attorney fees, and costs.

¶ 13           On December 1, 2023, defendant filed a motion to dismiss the complaint pursuant to section 2-619 of the Code, claiming that the action was barred by the applicable statute of limitations. Specifically, defendant contended that plaintiff had previously claimed that the same balance sought in the complaint—$99,973.28—was due as of August 26, 2013, more than 10 years prior to the filing of the complaint. Thus, any applicable statute of limitations would bar plaintiff from seeking relief.

¶ 14           Attached to the motion to dismiss was defendant's affidavit, in which he averred that he had not made any payments under the agreement since June 1, 2013, as well as the letters set forth above.

¶ 15           In response, plaintiff claimed that the action was timely filed, since the cause of action did not accrue until February 22, 2018, the maturity date of the agreement. Plaintiff did not include any counteraffidavits or other evidence concerning any communications with defendant.

¶ 16           On February 21, 2024, the circuit court entered an order granting defendant's motion and dismissing the complaint with prejudice, finding that "[t]he Court measures the running of the statute [of limitations] from August 26, 2013."

¶ 17           Defendant timely filed a petition for attorney fees pursuant to section 15-1510 of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1510 (West 2022)), seeking an award of $6,797 in attorney fees and $257.22 in costs. Attached to the petition was an affidavit from

defendant's primary attorney, setting forth the qualifications and billing rates of the law firm and its attorneys. The affidavit was supported by documentation from other cases in which the law firm had its fees awarded, an attorney fee matrix prepared by the civil division of the United States Attorney's Office for the District of Columbia, and billing records for defendant's case.

¶ 18      Plaintiff filed a motion to reconsider the dismissal of the complaint, claiming that the circuit court erred in determining that the cause of action accrued on August 26, 2013. Plaintiff also objected to defendant's fee petition, claiming that the billing records contained entries made by individuals not identified in the fee petition and that, in some cases, the billing rates appeared to conflict with the averments in the affidavit. Plaintiff accordingly requested that fees related to those entries be stricken or, in the alternative, reduced to conform to the hourly rates set forth in the affidavit.

¶ 19      In response to the objection to the fee petition, defendant's counsel conceded that, although the firm had raised its rates at the beginning of 2024, the affidavit included the older rates. As such, counsel did not object to reducing the fee petition by $577, the difference between the old and new rates; defendant also provided the full names and roles of the individuals who were identified only by initials in the billing records. Defendant, however, also sought fees in connection with litigating plaintiff's motion to reconsider, which added $2,100 to the fee petition. Accordingly, defendant sought a revised fee award of $9,227.22 in attorney fees and costs.

¶ 20      On June 13, 2024, the circuit court denied plaintiff's motion to reconsider, finding that "[t]he Court applies a ten-year limitations period beginning on August 26, 2013." The circuit court also granted defendant's fee petition, awarding $9,227.22 in attorney fees and costs.

¶ 21    Plaintiff timely filed a notice of appeal, and this appeal follows.

¶ 22                                    ANALYSIS

¶ 23    On appeal, plaintiff contends that the circuit court erred in dismissing its complaint, based on the circuit court's finding that the statute of limitations began running on August 26, 2013, and not February 22, 2018, the maturity date of the agreement. Plaintiff further contends that the circuit court erred in awarding defendant attorney fees. We consider each argument in turn.

¶ 24                               *Motion to Dismiss*

¶ 25    Plaintiff's primary argument on appeal concerns the circuit court's dismissal of its complaint pursuant to section 2-619 of the Code. A motion to dismiss under section 2-619 admits the legal sufficiency of all well-pleaded facts but allows for the dismissal of claims barred by an affirmative matter defeating those claims or avoiding their legal effect. *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 83 (citing *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006)). When reviewing a motion to dismiss under section 2-619, a court accepts as true all well-pleaded facts in the plaintiff's complaint and all inferences that can reasonably be drawn in the plaintiff's favor. *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). Additionally, a cause of action should not be dismissed under section 2-619 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 277-78 (2003).

¶ 26    We review a dismissal under section 2-619 *de novo*. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006); *Morr-Fitz, Inc.*, 231 Ill. 2d at 488. Additionally, despite plaintiff's assertion to the contrary, we may affirm the circuit court's judgment if the record supports a basis for dismissal, regardless of whether the circuit court relied on that basis or whether its reasoning was correct. *Moore v. Pendavinji*, 2024 IL App (1st) 231305, ¶ 20;

see *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 261 (2004) (when reviewing a section 2-619 dismissal, the reviewing court can affirm "on any basis present in the record," even if it does not agree with the lower court's reasoning); *In re Marriage of Gary*, 384 Ill. App. 3d 979, 987 (2008) ("we may affirm on any basis supported by the record, regardless of whether the trial court based its decision on the proper ground").

¶ 27      In this case, the circuit court dismissed the complaint based on its finding that the statute of limitations barred the action. See 735 ILCS 5/2-619(a)(5) (West 2022). A mortgage is incident to the underlying debt. *Moore v. Lewis*, 51 Ill. App. 3d 388, 391 (1977); *U.S. Bank National Ass'n v. Gagua*, 2020 IL App (1st) 190454, ¶ 49; see also *ABN AMRO Mortgage Group, Inc. v. McGahan*, 237 Ill. 2d 526, 536 (2010) ("The foreclosure action is based on the note, the vehicle which gives the plaintiff the legal right to proceed against the property. The object of the foreclosure action is to enforce the obligation created by that contract ***."). As such, where the underlying obligation is barred by the statute of limitations, a mortgage foreclosure action is similarly barred. *United Central Bank v. KMWC 845, LLC*, 800 F.3d 307, 311 (7th Cir. 2015) ("long-standing Illinois law precludes a plaintiff from foreclosing on a mortgage when an action on the underlying note is barred by the statute of limitations or another procedural rule")[3]; *Financial Freedom v. Kirgis*, 377 Ill. App. 3d 107, 124 (2007) (citing the "old principle" that " 'where the note is barred, the mortgage being but an incident to it, all right of action on the mortgage is also barred' " (quoting *Waughop v. Bartlett*, 165 Ill. 124, 132 (1896), *overruled on other grounds by ABN AMRO*, 237 Ill. 2d at 538)), *overruled*

---

[3]In *First Midwest Bank v. Cobo*, 2018 IL 123038, ¶ 39 n.2, our supreme court noted the Seventh Circuit's reference to "an old Illinois rule prohibiting a lender from suing under the mortgage when a statute of limitations or other procedural rule barred a suit under the note" and indicated that, "[w]ithout approving of the Seventh Circuit's analysis in that case," such a rule did not affect the analysis in the case before it. As the supreme court has not affirmatively overruled the rule, however, it appears to remain good law despite its age.

*on other grounds by ABN AMRO*, 237 Ill. 2d at 538; *Dunas v. Metropolitan Trust Co.*, 41 Ill. App. 2d 167, 170 (1963) (" 'where the debt is paid or barred by the Statute of Limitations, a mortgage being but incident to the debt, is no longer a lien on the property' " (quoting *Markus v. Chicago Title & Trust Co.*, 373 Ill. 557, 560 (1940), *overruled on other grounds by ABN AMRO*, 237 Ill. 2d at 538)). Thus, courts generally look to the statute of limitations of the underlying debt in determining the appropriate statute of limitations in a foreclosure action, an approach which the parties also take in the instant appeal. See, *e.g.*, *Fifth Third Bank v. Brazier*, 2019 IL App (1st) 190078, ¶¶ 16-25 (discussing statute of limitations applicable to promissory notes in mortgage foreclosure action).

¶ 28      On appeal, plaintiff primarily challenges the date on which the circuit court found that the cause of action accrued. Specifically, plaintiff challenges the circuit court's finding that the statute of limitations began running on August 26, 2013, the date identified as the "Past Due Date" in plaintiff's August 22, 2022, delinquency notice to defendant, and not February 22, 2018, the maturity date of the agreement. We agree, however, with defendant's position that proper review of the circuit court's finding requires us to first determine the nature of the debt instrument and the applicable statute of limitations. While plaintiff contends that these questions were not decided by the circuit court, and therefore are not properly before us on appeal, we disagree. As noted, it is well-settled that we may affirm the circuit court's judgment on any basis supported by the record, regardless of whether that basis was relied upon by the circuit court. See *Moore*, 2024 IL App (1st) 231305, ¶ 20. Moreover, as defendant argued for a five-year statute of limitations in his motion to dismiss, the question of the applicable statute of limitations was presented before the circuit court. In finding the matter barred by the statute of limitations, the circuit court therefore necessarily considered the matter, even if implicitly.

We turn, then, to the threshold issues before us, namely, the nature of the debt instrument and the applicable statute of limitations, before considering the propriety of the circuit court's dismissal.

¶ 29                                    Nature of Instrument

¶ 30        In its brief, plaintiff characterizes the agreement as a "note" subject to the 10-year statute of limitations applicable to promissory notes. See 735 ILCS 5/13-206 (West 2022). Defendant, however, contends that the agreement is not a "note," as that is a defined term under the Uniform Commercial Code (UCC). See 810 ILCS 5/3-104 (West 2022). We observe that section 3-104 of the UCC discusses notes in the context of defining negotiable instruments. *Id.* Section 13-206 of the Code, however, indicates only that it is applicable to "promissory notes" and makes no reference to the negotiability of such documents. See 735 ILCS 5/13-206 (West 2022). As such, at least one court has found that section 13-206 applies to "nonnegotiable promissory notes," among other written evidences of indebtedness. See *Krajcir v. Egidi*, 305 Ill. App. 3d 613, 620 (1999).[4] Accordingly, the negotiability of the agreement does not necessarily determine whether it is a promissory note subject to a 10-year statute of limitations.

¶ 31        Nevertheless, while not identified by either party, we find that the most appropriate description of the agreement in the instant case is a "revolving credit loan." A revolving credit loan is defined as:

---

[4]Prior to 1997, section 3-118 of the UCC provided for a six-year statute of limitations for negotiable promissory notes. 810 ILCS 5/3-118 (West 1996). The legislature subsequently amended both section 3-118 of the UCC and section 13-206 of the Code to remove subsections (a) and (b) from section 3-118 and add similar language to section 13-206. See Pub. Act 90-451 (eff. Jan. 1, 1998); *Sadler v. Service*, 406 Ill. App. 3d 1063, 1066 (2011). Accordingly, there is no longer a distinction with respect to the statutes of limitations applicable to negotiable or non-negotiable promissory notes. The fact, however, that section 13-206 previously provided a statute of limitations applicable to "promissory notes" despite the presence of a specific statute of limitations for negotiable promissory notes under the UCC, suggests that the 10-year statute of limitations provided in section 13-206 is not limited to negotiable instruments, as defendant contends.

"[A]n arrangement, including by means of a credit card ***[,] between a lender and debtor pursuant to which it is contemplated or provided that the lender may from time to time make loans or advances to or for the account of the debtor through the means of drafts, items, orders for the payment of money, evidences of debt or similar written instruments, whether or not negotiable, signed by the debtor or by any person authorized or permitted so to do on behalf of the debtor, which loans or advances are charged to an account in respect of which account the lender is to render bills or statements to the debtor at regular intervals (hereinafter sometimes referred to as the 'billing cycle') the amount of which bills or statements is payable by and due from the debtor on a specified date stated in such bill or statement or at the debtor's option, may be payable by the debtor in installments. A revolving credit arrangement which grants the debtor a line of credit in excess of $5,000 may include provisions granting the lender a security interest in real property or in a beneficial interest in a land trust to secure amounts of credit extended by the lender." 815 ILCS 205/4.1 (West 2022).

A bank may engage in making revolving credit loans secured by mortgages or deeds of trust on real property (see 205 ILCS 5/5d (West 2022)), and the Mortgage Foreclosure Law provides that it applies to mortgages securing revolving credit loans (735 ILCS 5/15-1207(b) (West 2022)).

¶ 32        The agreement at issue in the instant case falls squarely within the definition of a "revolving credit loan," as it was an arrangement between plaintiff and defendant in which plaintiff agreed to make credit advances on defendant's account up to the amount of defendant's credit limit, and upon making such advances, plaintiff would issue periodic statements which were to be paid by defendant in installments. As the agreement provided for a line of credit in excess of

$5,000, it also appropriately included a provision granting plaintiff a security interest in defendant's real property as provided in the mortgage. Accordingly, we must determine the statute of limitations applicable to actions involving revolving credit loans.

¶ 33                                         Statute of Limitations

¶ 34        As noted, plaintiff contends that the applicable statute of limitations is the 10-year statute of limitations for actions based on "bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing." 735 ILCS 5/13-206 (West 2022). Defendant, by contrast, maintains that the five-year statute of limitations for "actions on unwritten contracts" and "all civil actions not otherwise provided for" (*id.* § 13-205) is more appropriate. After considering the standards for applying the 10-year statute of limitations, we agree with defendant that the instant agreement is not the type of agreement that is covered by section 13-206 of the Code and, accordingly, it is subject to the five-year statute of limitations set forth in section 13-205.

¶ 35        We have discovered no case law interpreting the statute of limitations for revolving credit loans generally, nor does there appear to be any Illinois authority squarely addressing the statute of limitations applicable to a line of credit that is secured by a mortgage on real estate.[5] There is, however, authority discussing the statute of limitations with respect to credit card agreements. Plaintiff contends that this authority is not applicable, as a credit card is not analogous to the type of agreement at issue here. While we recognize that the two types of transactions are not identical, both are considered "revolving credit loans" under the law. See

[5]We note that an unreported federal district court case has addressed the matter, finding a five-year statute of limitations applicable under Illinois law. See *Manlangit v. FCI Lender Services, Inc.*, No. 19-cv-03265, 2020 WL 5570092, at *3 (N.D. Ill. Sept. 16, 2020). It is well settled, however, that "[u]nreported decisions have no precedential value, and this is even more true for decisions from foreign jurisdictions." *American Family Mutual Insurance Co. v. Plunkett*, 2014 IL App (1st) 131631, ¶ 38 (citing *Burnette v. Stroger*, 389 Ill. App. 3d 321, 329 (2009)).

815 ILCS 205/4.1 (West 2022). Consequently, we find cases interpreting credit card agreements to be instructive in our analysis of the agreement in the case at bar.

¶ 36    The cardholder agreement between a bank issuing a credit card and its customer has been found to be in the nature of a loan. *Harris Trust & Savings Bank v. McCray*, 21 Ill. App. 3d 605, 610 (1974). As such, in appropriate circumstances, a cause of action under the cardholder agreement may be subject to the 10-year statute of limitations applicable to written contracts. *Id.* The issuance of the credit card itself, however, does not create a contract; instead, a separate contract is created each time the card is used according to the terms of the cardholder agreement then in force. *Garber v. Harris Trust & Savings Bank*, 104 Ill. App. 3d 675, 678 (1982).

¶ 37    Illinois law strictly construes a "written contract" for purposes of the statute of limitations, finding a written contract only where "all the essential terms of the contract are in writing and are ascertainable from the instrument itself." *Brown v. Goodman*, 147 Ill. App. 3d 935, 939 (1986). Consequently, if parol evidence is needed to establish the essential terms and conditions of the contract, the contract is treated as oral for purposes of the statute of limitations. *Id.*; see *Armstrong v. Guigler*, 174 Ill. 2d 281, 287 (1996) (the "dispositive question" for purposes of the statute of limitations is whether the existence of the contract or one of its essential terms must be proven by parol evidence). Similarly, where parol evidence is required, a written document does not qualify as "other evidences of indebtedness" under section 13-206 of the Code. *Toth v. Mansell*, 207 Ill. App. 3d 665, 669-70 (1990). In the case of actions concerning credit cards, therefore, courts have found the five-year statute of limitations for oral contracts applicable where parol evidence is required to establish all of the essential terms and conditions of the contract. See, *e.g.*, *Portfolio Acquisitions, L.L.C. v.*

*Feltman*, 391 Ill. App. 3d 642, 652 (2009); *Toth*, 207 Ill. App. 3d at 668-69 (construing an "open account" between an automotive supply store and its customer).

¶ 38        In this case, we similarly find that the dispositive question is whether parol evidence is required to establish the essential terms of the agreement. There are three possible categories under section 13-206 that could potentially include the agreement here: "promissory notes," "written contracts," or "other evidences of indebtedness in writing." 735 ILCS 5/13-206 (West 2022). As explained above, both "written contracts" and "other evidences of indebtedness in writing" have been interpreted to require that the essential terms of the agreement appear within the writing itself, without resorting to parol evidence.

¶ 39        Likewise, while the Code does not define "promissory note" for purposes of section 13-206, the term generally means "[a]n unconditional written promise, signed by the maker, to pay absolutely and in any event a certain sum of money either to, or to the order of, the bearer or a designated person." Black's Law Dictionary 1272-73 (12th ed. 2024). In Illinois, it has long been the law that, to be considered a promissory note, the agreement must provide for payment "absolutely" and "unconditionally." See, *e.g.*, *Chicago Trust & Savings Bank v. Chicago Title & Trust Co.*, 190 Ill. 404, 408 (1901); *First National Bank v. Lamoreaux*, 255 Ill. App. 15, 19 (1929). See also *In re Estate of Garrett*, 24 Ill. App. 3d 895, 898 (1975) (to be a promissory note, a writing must "provide for payment absolutely and unconditionally"). This includes a requirement that the obligation be for a definite fixed sum.[6] See *Lamoreaux*, 255 Ill. App. at 19 (agreement was not a promissory note where "it was impossible to ascertain what

---

[6]We observe that some courts have periodically used the term "promissory note" to describe agreements that would arguably not satisfy these requirements. See, *e.g.*, *Watseka First National Bank v. Ruda*, 135 Ill. 2d 140, 143-44 (1990) (describing an " 'on call line of credit' " as one of two "promissory notes" at issue). None of the cases we have discovered, however, turns on the question of whether a particular document is a "promissory note" for purposes of section 13-206, and we do not read them as changing the longstanding definition of the term.

the exact amount of payment would be, and there was a possibility that no payment might be made whatever"); *Ruettinger v. Schulman*, 293 Ill. App. 285, 287 (1938) (writing was not a promissory note where "[t]he writing does not contain an unconditional promise to pay a sum certain and at a fixed and definite time").

¶ 40    In this case, we cannot find that the agreement between the parties falls within the scope of section 13-206, as the terms of the agreement do not set forth a definite fixed sum that defendant was obligated to pay. A writing is complete for purposes of the statute of limitations " 'when the language of the instrument may fairly be construed to contain a promise to pay money or contains facts from which the law implies a promise to pay, so long as parol evidence is not necessary to establish any essential elements.' " *Kranzler v. Saltzman*, 407 Ill. App. 3d 24, 28 (2011) (quoting *Toth*, 207 Ill. App. 3d at 670). The "essential elements" for a promise to pay are (1) the parties to the agreement, (2) the nature of the transaction, (3) the amount in question, and (4) at least a reasonable implication of an intention to repay the debt. *Id.* Here, the third of these elements—the amount in question—is absent.

¶ 41    The agreement in this case is silent as to the amount that defendant was obligated to pay. Defendant was *entitled* to borrow up to $100,000 under the terms of the agreement, but the agreement does not specify how much defendant *did* borrow. It is the latter, not the former, that serves as the amount of defendant's obligation, as defendant was only required to repay that which he borrowed. This was not the type of agreement in which defendant was provided a certain sum of money that he was obligated to repay over time. Instead, plaintiff provided the outer limit of the credit advances it was willing to make, and defendant had the option of requesting as much—or as little—of those funds as he desired. Consequently, the amount of defendant's obligation to pay is not ascertainable from the terms of the agreement itself but

requires parol evidence to establish. The agreement therefore does not fall within the scope of section 13-206 and, instead, is subject to the five-year statute of limitations set forth in section 13-205 of the Code.

¶ 42                              Accrual of Statute of Limitations

¶ 43        Having determined the applicable statute of limitations, we turn to reviewing the circuit court's finding that the statute of limitations accrued on August 26, 2013. Generally, the statute of limitations in a breach of contract action begins to run "when facts exist which authorize the bringing of an action." (Internal quotation marks omitted.) *Hassebrock v. Ceja Corp.*, 2015 IL App (5th) 140037, ¶ 35. " '[W]here a money obligation is payable in installments, a separate cause of action arises on each installment and the statute of limitations begins to run against each installment as it becomes due.' " *Deutsche Bank Trust Co. Americas v. Sigler*, 2020 IL App (1st) 191006, ¶ 42 (quoting *Thread & Gage Co. v. Kucinski*, 116 Ill. App. 3d 178, 184 (1983)). This general rule is subject to an exception, however, where the contract contains an acceleration provision and such a provision "provides that payment of the entire debt upon default is automatic, or where the acceleration provision is optional and the creditor unequivocally exercises the option." *Kucinski*, 116 Ill. App. 3d at 184. In such a case, courts have sometimes found that the statute of limitations begins to run immediately upon default. *Id.*

¶ 44        In this case, plaintiff contends that its October 4, 2023, complaint is timely, since it never accelerated the agreement upon defendant's default and, accordingly, the cause of action accrued upon defendant's failure to pay the final balloon payment owed on February 22, 2018. Defendant, by contrast, claims that the agreement was not payable in installments and, even if it was, the August 22, 2022, delinquency notice established that plaintiff had accelerated the

16

indebtedness as of August 26, 2013. We, however, need not engage with these arguments, as our determination as to the applicable statute of limitations means that plaintiff's cause of action is time-barred even when applying the accrual date urged by plaintiff.

¶ 45                                                            *Attorney Fees*

¶ 46        Plaintiff also contends that the circuit court erred in awarding defendant attorney fees. Defendant was entitled to an award of reasonable attorney fees pursuant to section 15-1510 of the Mortgage Foreclosure Law. See 735 ILCS 5/15-1510(a) (West 2022) ("The court may award reasonable attorney's fees and costs to the defendant who prevails in a motion, an affirmative defense or counterclaim, or in the foreclosure action."). In this case, the circuit court awarded $9,227.22 in attorney fees and costs. Plaintiff claims that this award was improper, as defendant failed to support the request for fees with sufficient evidence.

¶ 47        An award of attorney fees is generally left to the discretion of the trial court, and we will not overturn a fee award absent an abuse of that discretion. *In re Estate of K.E.J.*, 382 Ill. App. 3d 401, 424 (2008). "An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Haage v. Zavala*, 2021 IL 125918, ¶ 40. The party seeking fees bears the burden of presenting sufficient evidence from which the circuit court may assess their reasonableness. *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 66 (2009). Such evidence must specify "the services performed, by whom they were performed, the time expended thereon and the hourly rate charged therefor." *Id.*

¶ 48        In this case, plaintiff contends that defendant failed to satisfy his burden to provide detailed records as to who performed certain services and claims that the billing records conflicted with

the affidavit attached to the fee petition. These issues, however, were raised by plaintiff before the circuit court, and as a result, defendant addressed them during the briefing on the motion.

¶ 49    Plaintiff also contends that the circuit court should not have awarded defendant an additional $2,100 in attorney fees based on the briefing on the motion to reconsider, claiming that this amount is not supported by adequate evidence. While plaintiff maintains that "no business records" supported defendant's request, we note that defendant's counsel had previously included evidence of his billing rate in the fee petition and included an affidavit as to the time expended on preparation of the motion.

¶ 50    We also note that plaintiff failed to include a transcript or bystander's report for the proceedings on the fee petition. The appellant has the burden of presenting a sufficiently complete record to support a claim of error. *Waukegan Hospitality Group, LLC v. Stretch's Sports Bar & Grill Corp.*, 2024 IL 129277, ¶ 20. In the absence of such a record on appeal, "it will be presumed that the order entered by the trial court was in conformity with [the] law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Here, without a transcript of the proceedings, we cannot say that the evidence establishes that the circuit court abused its discretion in awarding defendant the requested attorney fees.

¶ 51                                    CONCLUSION

¶ 52    For the reasons set forth above, we affirm the judgment of the circuit court. The circuit court properly dismissed plaintiff's complaint pursuant to section 2-619 of the Code, where the cause of action accrued more than five years prior to the filing of the foreclosure complaint. The circuit court also did not err by awarding defendant attorney fees, where there is no evidence in the record suggesting that the circuit court's award was an abuse of discretion.

¶ 53    Affirmed.

***BMO Bank N.A. v. Zbroszczyk***, **2025 IL App (1st) 241333**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23-CH-08578; the Hon. William B. Sullivan, Judge, presiding. |
| **Attorneys for Appellant:** | Adham Alaily, of Egan & Alaily LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Daniel A. Edelman and Keelan D. Kane, of Edelman, Combs, Latturner & Goodwin, LLC, of Chicago, for appellee. |