2025 IL App (2d) 240768-U
No. 2-24-0768
Order filed December 23, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-MT-984 |
| SIMEON N. HANDY, | ) ) | Honorable Jill K. Konen, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) The trial court had jurisdiction over defendant's prosecution on two traffic citations. The citations presented justiciable matters, invoking the court's subject-matter jurisdiction. Also, despite defendant's purported "special appearance," the trial court obtained personal jurisdiction over him when he appeared in court. (2) Sufficient evidence supported defendant's convictions of (a) driving while license revoked, where the police officer observed defendant seated behind the wheel of a vehicle, parked on a highway but with the keys in the ignition, at a time when defendant's license was revoked and (b) improper display of a license plate, where the license plate on the vehicle had, in fact, been issued to a different vehicle.

¶ 2    *Pro se* defendant, Simeon N. Handy, appeals his convictions of driving while license

revoked (625 ILCS 5/6-303(a) (West 2022)) and improper display of a license plate (*id.* § 3-

413(b)).  Defendant argues that the trial court lacked jurisdiction over this case and that the evidence was insufficient to support his convictions.  We disagree and affirm.

¶ 3                                I. BACKGROUND

¶ 4     On August 18, 2024, defendant received two citations for traffic offenses.  Each citation was written on an "Illinois Citation and Complaint" form approved by the Illinois Supreme Court.  See 725 ILCS 5/111-3(b) (West 2022) ("[W]hen a citation is issued on a Uniform Traffic Ticket or Uniform Conservation Ticket (in a form prescribed by the Conference of Chief Circuit Judges and filed with the Supreme Court), the copy of such Uniform Ticket which is filed with the circuit court constitutes a complaint to which the defendant may plead, *unless he specifically requests that a verified complaint be filed*."  (Emphasis added.)); Ill. S. Ct. R. 552 (eff. Sept. 18, 2023) ("Uniform Citation and Complaint forms and conservation complaints shall be in forms which may, from time to time, be approved by the Conference of Chief Circuit Judges and filed with this court.  The uniform forms shall be adapted for use by municipalities.").

¶ 5     The first citation was for driving while license revoked, in violation of section 6-303(a) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/6-303(a) (West 2022)).  The citation indicated that a court appearance was required and that defendant's appearance was scheduled for 9 a.m. on September 23, 2024.

¶ 6     The second citation was for improper display of a license plate, in violation of section 3-413(b) of the Vehicle Code (*id.* § 3-413(b)).  The citation indicated that no court appearance was required.

¶ 7     Each citation included the following sworn statement by the arresting officer:

"Under penalties as provided by law for false certification pursuant to section 1-109 of the Code of Civil Procedure and perjury pursuant to Section 32-2 of the Criminal Code of

2012, the undersigned certifies that the statements set forth in this instrument are true and correct."

¶ 8    Defendant was *pro se* throughout the proceedings below.  On September 12, 2024, defendant filed a motion to "[a]dvance court date," apparently regarding the scheduled September 23, 2024, court date on the first traffic citation.  Defendant's motion indicated that he would appear on September 20, 2024, at 9 a.m.

¶ 9    On September 17, 2024, defendant filed a "Motion to strike/Dismiss complaint/case." Defendant summarized his grounds for relief: (1) "[f]ailure to present cause of action or crime," (2) "[n]o sworn complaint/injury from plaintiff," and (3) "[l]ack of Jurisdiction to proceed with judgment."  Elaborating on those grounds, defendant first advised that he was proceeding "by special appearance, not submig [*sic*] to the Court's Jurisdiction."  Defendant asserted that the State had not alleged "a cause of action or crime," because defendant was "not accused of violating anyone's legal rights" and, thus, there was no "*Corpus delicti*."  According to defendant, the "[f]ailure to present the court [with] a case deprive[d] [the] court of jurisdiction."  Thus, because the State "failed to allege the required elements of a cause of action/crime and there [was] no *Corpus delicti*, the court ha[d] no jurisdiction."  Defendant stated that the "foundation for the [c]ourt's [j]urisdiction is the purpose of government" itself.  Defendant claimed that "standing represent [*sic*] a jurisdictional requirement which remains open to review at all stages of the litigation."

¶ 10    Defendant filed with his motion a "Notice of Special Appearance to challenge jurisdiction," which did not contain written argument.

¶ 11    Defendant and the State appeared in court on September 20, 2024.  At that time, the trial court advised defendant that (1) driving while license revoked was a Class A misdemeanor

punishable by up to one year in jail and fines up to $2,500, and (2) improper display of a license plate was a petty traffic offense. The court also admonished defendant of his rights and his duty to appear on all court dates.

¶ 12 The trial court then noted that defendant had filed his "Motion to strike/Dismiss complaint/case." Defendant responded that he had filed "two motions, one for a special appearance" and "another motion to strike and dismiss." Defendant declined to offer argument on his motions. The State also declined to respond to the motions.

¶ 13 The trial court then denied both motions. In particular, the court stated that defendant had not "alleged anything that would challenge the [court's] jurisdiction, and the sworn complaint that [defendant] received was the traffic citation on August 18th of 2024." Defendant replied that he did not "understand the nature and causes" against him, and the court explained that it could not offer him legal advice. In response, defendant said that he was not seeking "legal advice, just legal intent." Defendant then asked whether it was "a civil case or a criminal case." The court responded that defendant was "charged under the vehicle code of the state of Illinois." Defendant asked, "Is it a criminal offense or is it a civil?" The court clarified, "[I]f it makes you feel better to say it's a criminal charge, yes, you're being charged criminally." Defendant then asked whether he was being charged "under common law or admiralty," to which the court answered that defendant was not being charged "under either of those," but "under the statutes of the state of Illinois." When defendant asked the court to confirm whether "it's statutory jurisdiction," the court explained that it had "jurisdiction pursuant to the statutes of the state of Illinois." Defendant responded, "So if I'm being charged under the statutory jurisdiction, I've never heard any record of statutory adjudication under the constitution, ***." Defendant asked for the "published rules for

procedure," and the court advised defendant to "go to the law library to get that," because it was "not [the court's] job to give [defendant] the statutes."

¶ 14    Next, the trial court reiterated defendant's right to an attorney and his option to either set the case for trial or negotiate with the State for a plea bargain. When defendant asked if he could negotiate with the State "today," the court noted that the State did not likely have the police reports to make an offer. Defendant then requested a "motions hearing" before proceeding to trial, and the court responded that "no motions" were pending. Defendant asked why his "motions" were denied, and the court again explained that defendant had failed to "put any allegations to challenge the jurisdiction." The court then scheduled the next court date for November 1, 2024.

¶ 15    The court's orders entered that day reflected that (1) defendant was "[p]resent in person" in court; (2) defendant's "motions" were denied; and (3) the court admonished defendant "multiple times."

¶ 16    The parties appeared at the next scheduled court date, November 1, 2024. Defendant announced that he was representing himself and would talk to the State before setting the case for trial. The State responded that it was pursuing jail time. The parties negotiated off the record, but no resolution was reached. Next, the State indicated that defendant had filed a motion challenging the court's jurisdiction, and the trial court explained that defendant's motion to that effect had already been denied. At that time, defendant requested a "motions hearing" before trial because he planned to file some "new" motions. Defendant asked for further clarification on whether he was charged with a crime, and the court reiterated that he was being prosecuted under the Vehicle Code with a petty offense (improper display of a license plate), and a Class A misdemeanor (driving while license revoked). Defendant then requested a bench trial and signed a jury waiver

form. In its November 1, 2024, order, the court set the matter for a bench trial on December 9, 2024, and set a cut-off date of November 18, 2024, for any motions *in limine*.

¶ 17 On November 18, 2024, defendant filed an "OBJECTION BY THE UNDERSIGNED AFFIANT," claiming, *inter alia*, that he was "INVOKING" (1) "SPECIAL APPEARANCE UNDER DURESS AND THREATS," (2) "PRIVILEGES AND IMMUNITIES CLAUSE," and (3) "THE FULL FAITH AND CREDIT CLAUSE." Defendant stated that he "[would] not appear voluntarily and require[d] a valid court order and a verified criminal complaint with evidence introduced by [the State] showing an *injury in fact* ('*corpus delicti*') caused by [defendant]." (Emphasis in original.) Later in the "OBJECTION," defendant listed "QUESTIONS AND EVIDENCE THIS COURT MUST PRODUCE WITHIN FOURTEEN (14) DAYS AFTER RECEIPT OF THIS NOTICE OR THE PROCEEDINGS SHALL BE DISMISSED FOR DEFAULT[.]" One question was: "Where is the verified complaint sworn under threat of perjury from the [State]?" We note that the record contains no proof of service for the "OBJECTION."

¶ 18 The parties appeared for a bench trial on December 9, 2024. Defendant confirmed that he wished to represent himself. Before the trial began, the State advised the trial court that defendant had filed "some sort of motion" on November 18, 2024. The court acknowledged that "an objection [was] filed on the 18th." The following colloquy ensued:

"MS. DARSIE [(ASSISTANT STATE'S ATTORNEY)]: And the State never received notice of that, Your Honor. I just became aware of it when I was reviewing the electronic file today.

THE COURT: Oh, okay. I do not see any relief requested, I don't see—it just is an objection filed by the defendant.

MS. DARSIE: All right. So then—

THE COURT: So I'm going to just overrule that objection and we're going to proceed with trial.

MS. DARSIE: Thank you, [Y]our Honor. At this time [the] State would waive opening statement.

THE COURT: All right. Mr. Handy, would you like to make an opening statement?

DEFENDANT: This is a sworn affidavit, and by law this must be ruled upon, discussed. I don't even think anyone read it. So it's about eight pages, it's a sworn affidavit.

THE COURT: Well, did you give notice to the State of this? When you filed this, did you give—

DEFENDANT: Well, when I—when I called the lady, she said they do that automatically, so—

THE COURT: That's not correct. Anything that you file, you're obligated—

DEFENDANT: Well, that's what I was told.

THE COURT: —to provide a copy of it to the State's Attorney's Office.

DEFENDANT: She said she put a notice to the State's Attorneys [*sic*] right by the door, so that's the only reason why I filed it electronically. I filed a few things, I've never had this problem. She said she put a copy in the State's Attorney's door.

THE COURT: Okay, all right. So—

DEFENDANT: So—

THE COURT: —anything else you want to say?

DEFENDANT: Yeah. I have a sworn affidavit, so by law—

THE COURT: Okay, well—

DEFENDANT: —we're supposed to go over this.

THE COURT: —I've already ruled—I viewed your objection—

DEFENDANT: We didn't even go over it. We didn't even go over it. We didn't even go over it. We have to go over it by law.

THE COURT: We don't have to go over it. That is your—I read your objection by the undersigned affiant, and we are going to proceed as scheduled today, so that's what we're going to go forward with. ***."

¶ 19 The State waived its opening statement. Its only witness was Deputy Timothy Smith, who testified as follows. Smith had served as a patrol deputy for 16 years. On August 18, 2024, around 11:30 a.m., dispatch advised Smith of a custody dispute at a residence on South 8th Street in the Village of Kirkland. According to Smith, 8th Street was a "public roadway." When Smith arrived at the address, he saw a gold GMC Acadia parked on the road in front of the residence. Smith "ran the license plate" and learned that the registration had been issued for a vehicle that did not match the Acadia. That discrepancy, Smith explained, constituted the offense of improper display of a license plate, in violation of the Vehicle Code.

¶ 20 Smith approached the vehicle, which was occupied by just "one gentleman," who was later identified as defendant. Defendant was sitting "behind the wheel." When Smith was asked if "there [were] keys in the ignition of the vehicle," he replied, "They were there with the vehicle, yes." Smith asked defendant why he was parked outside the residence, and defendant responded that he was picking up a friend's child. Smith then asked defendant his name, and defendant answered, "Derek Pryor." After Smith was unable to confirm defendant's identity as Derek Pryor, he asked defendant for his date of birth. Defendant refused to provide that information. At that point, Smith asked defendant to exit the vehicle, which he did. When defendant opened the car

door, Smith heard a "dinging sound." Smith explained that such a sound "[t]ypically" means that the vehicle's keys are in the ignition. A backup officer stood by as Smith questioned defendant outside the vehicle. Smith then spoke to the complainant of the custody dispute. The complainant, defendant's ex-wife, identified defendant as Simeon Handy.

¶ 21 Smith was wearing a body camera that day and had reviewed the video footage of his encounter with defendant. The video footage was admitted into evidence as State's exhibit No. 1, without objection. The first five to six minutes of the video footage were played for the court and were consistent with Smith's testimony. When Smith approached the Acadia, defendant was sitting behind the steering wheel with the driver's window slightly down. Defendant stated that his name was Derek Pryor and that he was there to pick up a friend's son. When defendant refused to state his date of birth, Smith ordered defendant to exit the vehicle, and defendant complied. When defendant did so, a dinging sound could be heard inside the vehicle. Defendant's ex-wife then identified defendant as Simeon Handy, her ex-husband. Smith's backup officer noted that defendant had five outstanding warrants.

¶ 22 Smith resumed testifying and stated that, after defendant's identity was confirmed, he was handcuffed and placed under arrest. A search of defendant's vehicle revealed a State of Illinois identification card, which was admitted as State's exhibit No. 2, without objection. The card bore the name Simeon Handy and a Naperville address. Smith testified that defendant's ex-wife confirmed that defendant did not live with her at the Kirkland residence.

¶ 23 Smith testified that the presence of the keys in the ignition indicated that defendant had been in "in actual physical control of the vehicle." While at the scene, Smith checked defendant's name with the secretary of state and learned that his driving privileges were revoked at that time. The State then offered State's exhibit No. 3, which was the certified driving abstract from the

secretary of state showing that defendant's driving privileges had been revoked. The exhibit was admitted into evidence without objection.

¶ 24    Smith testified that defendant was cited for driving while license revoked and improper display of a license plate. Smith explained that he issued the driving-after-revocation citation because, in addition to defendant's then-revoked license, defendant was sitting inside the vehicle; the vehicle was not registered to the address in Kirkland, but to a different city and county; and no one else was present with defendant in the vehicle. Smith issued the license-plate citation because the license plate on the gold GMC Acadia "came back to a separate vehicle."

¶ 25    Defendant cross-examined Smith. When defendant asked whether he had put the key in the ignition to roll down the window, Smith answered, "I can't recall." Smith admitted that he did not perform a "traffic stop" on the gold GMC Acadia. Next, defendant commented that the vehicle "was in park," but he failed to pose a question to Smith. The court subsequently sustained numerous objections by the State on the basis that defendant's questions either sought legal conclusions or lacked relevancy.

¶ 26    The State rested. When the trial court asked defendant how he wanted to proceed, the conversation turned again to the question of jurisdiction. Defendant said it was the trial court's "duty to explain to [him] the jurisdiction," and the court reiterated that it had no duty to give defendant legal advice. The court then asked defendant whether he wanted to make a motion or testify. Defendant said that he was "definitely going to make a motion." The court observed that defendant was "trying to *** read [his previously denied] ['OBJECTION']," and the court would not permit it. Defendant then made an oral motion to dismiss the case, which the court denied. When defendant asked why his oral motion was denied, the court stated that it had read defendant's ["OBJECTION"] and was "overruling" it. When defendant asked the "grounds" for that ruling,

the court answered, "On the grounds that the State has a right to prosecute you under the Vehicle Code, the [c]ourt does have jurisdiction, and we're set for trial today. We're in the middle of trial."

¶ 27     Next, defendant asked if there was a "sworn complaint from an injured party or an injured party present." The court responded that defendant was "issued two citations," each of which had a sworn statement by the officer. After being asked multiple times whether he wished to testify, defendant said, "I don't need to testify." The court explained that, because defendant was not presenting any evidence, "the trial [was] over." Defendant then made another oral motion, claiming that the parties were in the "wrong courtroom." The court denied that motion as well. After repeated questioning by the court, defendant reiterated that he did not wish to testify.

¶ 28     The State delivered its closing argument. Defendant's closing argument began:

> "Okay. So by all of this assumption or presumption or whatever the case may be, by the Supreme Court law, to be found guilty of a crime you must have a sworn complaint from the injured party or injured party present which was never presented, so therefore, you do not have jurisdiction to move. ***."

Defendant further argued that the State's failure "to meet the constitutional minimum standard of an injury in fact" was a "cause for dismissal for lack of subject-matter jurisdiction to prosecute."

¶ 29     The trial court found defendant guilty of both driving while license revoked and improper display of a license plate.

¶ 30     A sentencing hearing immediately followed. The State asked for a jail sentence based on defendant's 20-year history of license suspensions and revocations. The trial court imposed a sentence of 24 months of conditional discharge, 10 days in jail, and $825 in fines and assessments.

¶ 31     This timely appeal followed.

¶ 32                                  II. ANALYSIS

¶ 33     At issue in this appeal is whether the trial court possessed subject-matter jurisdiction over defendant's case and personal jurisdiction over defendant himself.  Also at issue is whether there was sufficient evidence to find defendant guilty beyond a reasonable doubt of both traffic offenses.

¶ 34                                   A. Jurisdiction

¶ 35     Defendant first argues that the trial court lacked jurisdiction to hear his case, rendering its judgments void.  According to defendant, when jurisdiction is "formally challenged, the burden shifts to the court to establish, on the record, that it has both subject matter and personal jurisdiction before proceeding."  In defendant's mind, the trial court "failed to address or establish its jurisdiction," and, by "continuing proceedings without addressing [defendant's] jurisdictional challenge," the court "acted in excess of its authority and violated [defendant's] constitutional rights under the Fourteenth Amendment to the U.S. Constitution."  We reject defendant's contentions.

¶ 36     "In a general sense, 'jurisdiction' refers to the 'right or power to interpret and apply the law,' or to a court's 'sphere of authority or control.' "  *In re M.W.*, 232 Ill. 2d 408, 414 (2009) (quoting Webster's II New Collegiate Dictionary 601 (1st ed. 1999)).  "In a technical, legal sense, however, jurisdiction is composed of two distinct elements: subject matter jurisdiction and personal jurisdiction."  *Id.*  If a court lacks either jurisdictional element, "any order entered in the matter is void *ab initio* and, thus, may be attacked at any time."  *Id.*  The issue of whether a trial court had subject-matter jurisdiction presents a question of law, which we review *de novo*. *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 294 (2010).  Likewise, we review *de novo* whether the trial court obtained personal jurisdiction over the defendant.  *People v. Matthews*, 2016 IL 118114, ¶ 9.

¶ 37    Subject-matter jurisdiction "refers to the power of a court to hear and determine cases of the general class to which the proceeding in question belongs." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002). "With the exception of the circuit court's power to review administrative action, which is conferred by statute"—and is not at issue here—"a circuit court's subject matter jurisdiction is conferred entirely by our state constitution." *Id.* (citing Ill. Const. 1970, art. VI, § 9). "[S]ubject matter jurisdiction *** is invoked by the filing of a petition or complaint alleging the existence of a justiciable matter." *M.W.*, 232 Ill. 2d at 426. "[A] 'justiciable matter' is a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota*, 199 Ill. 2d at 335. "[E]ven a defectively stated claim is sufficient to invoke the court's subject matter jurisdiction, as '[s]ubject matter jurisdiction does not depend upon the legal sufficiency of the pleadings.' " *In re Luis R.*, 239 Ill. 2d 295, 301 (2010) (quoting *Belleville Toyota*, 199 Ill. 2d at 340). Indeed, the only consideration is whether the alleged claim falls within the general class of cases that the court has the inherent power to hear and determine. *Id.* If it does, then subject-matter jurisdiction is present. *Id.* Subject-matter jurisdiction cannot be waived or forfeited. *Belleville Toyota*, 199 Ill. 2d at 333.

¶ 38    Defendant's argument that the trial court lacked subject-matter jurisdiction over his traffic offenses charged under the Vehicle Code lacks merit. Instructive here is *People v. Sellers*, 2015 IL App (4th) 140604-U, ¶¶ 5, 17,[1] where the defendant argued that the trial court lacked subject-matter jurisdiction over his prosecution for two traffic offenses. The defendant was charged "by

---

[1]Even before the 2021 amendment to Illinois Supreme Court Rule 23(e) (eff. Jan 1. 2021) allowing parties to cite nonprecedential decisions for persuasive purposes, courts could rely on the reasoning of nonprecedential decisions. See *People v. Ingram*, 2020 IL App (2d) 180353, ¶ 21 n.1.

way of two traffic tickets" with driving with an alcohol concentration of 0.08 or more (625 ILCS 5/11-501(a)(1) (West 2012)) and driving under the influence of alcohol (*id.* § 11-501(a)(2))—both in violation of the Vehicle Code. *Sellers*, 2015 IL App (4th) 140604-U, ¶ 5. Citing supreme court precedent on subject-matter jurisdiction, the *Sellers* court determined that the traffic citations presented "matters that [were] appropriate for review by the trial court," and, therefore, "the court had subject-matter jurisdiction to decide whether [the] defendant committed the charged offenses." *Id.* ¶¶ 18-19 (citing *Belleville Toyota*, 199 Ill. 2d at 334; *Luis R.*, 239 Ill. 2d at 301).

¶ 39 Here, as in *Sellers*, the trial court clearly had subject-matter jurisdiction to determine whether defendant committed the two charged traffic offenses, namely driving while license revoked and improper display of a license plate. Subject-matter jurisdiction was conferred by the Illinois Constitution because each citation charging an offense presented a "definite and concrete" controversy "touching upon the legal relations of parties having adverse legal interests." See *Belleville Toyota*, 199 Ill. 2d at 335; *Sellers*, 2015 IL App (4th) 140604-U, ¶¶ 18-19; *People v. Stroud*, 2020 IL App (3d) 190064, ¶ 8 ("Subject matter jurisdiction was conferred by the Illinois Constitution because a prosecution for driving without a valid driver's license is a justiciable matter."). Thus, the trial court incontestably had subject-matter jurisdiction over the prosecution of the traffic charges.

¶ 40 Defendant emphasizes that "there is no sworn and verified complaint on record from the [State]." Specifically, defendant argues that a "verified complaint is required to invoke the trial court's jurisdiction in a criminal or traffic matter," and an "unsworn complaint is insufficient to invoke jurisdiction." According to defendant, without "a [sworn] complaint on file, there is no lawful accuser, no valid initiation of prosecution, and no proper subject matter jurisdiction." Defendant concludes that, because "there is no sworn and verified complaint on record from the

plaintiff, the proceedings were improperly initiated, depriving the court of jurisdiction and [defendant] of due process."

¶ 41    Defendant's argument implicates the difference between a sworn citation and a verified complaint.  Both citations here contained a sworn statement by the officer, in the following form:

> "Under penalties as provided by law for false certification pursuant to section 1-109 of the Code of Civil Procedure and perjury pursuant to Section 32-2 of the Criminal Code of 2012, the undersigned certifies that the statements set forth in this instrument are true and correct."

Section 111-3(b) of the Code of Criminal Procedure of 1963 (725 ILCS 5/111-3(b) (West 2022)) provides that, if a citation is issued on a "Uniform Traffic Ticket" form, as both citations here were, "the copy of such Uniform Ticket which is filed with the circuit court constitutes a complaint to which the defendant may plead, *unless he specifically requests that a verified complaint be filed*."  (Emphasis added.)  However, a complaint need not be verified to provide a basis for subject-matter jurisdiction. *People v. Pankey*, 94 Ill. 2d 12, 17 (1983); *People v. Bradford*, 62 Ill. 2d 21, 22 (1975).  See *Luis R.*, 239 Ill. 2d at 301 (subject-matter jurisdiction does not depend on the legal sufficiency of the pleading).  The citations here, though not in the form of formal, verified complaints, presented justiciable matters and thus were sufficient to invoke the trial court's subject-matter jurisdiction.

¶ 42    Further, defendant is mistaken that the trial court failed to address his "jurisdictional challenge."  On the trial date and the two prior hearings in this case, the court addressed defendant's repeated oral and written arguments challenging its jurisdiction.  As explained, the

trial court was correct to deny those challenges, as both traffic offenses were justiciable matters appropriate for review by the court.[2]

¶ 43     In addition, we note that none of the authorities that defendant cites support his position on subject-matter jurisdiction. For instance, contrary to defendant's assertion that *People v. Pahl*, 124 Ill. App. 2d 177 (1970), "held that an unsworn complaint is insufficient to invoke jurisdiction," the *Pahl* case contains no discussion of jurisdiction. Similarly, the three other cases defendant references are either cited incorrectly or do not contain the propositions of law for which he cites them. For the foregoing reasons, we hold that the trial court had subject-matter jurisdiction over the prosecution of the charged traffic offenses, despite the absence of a verified complaint.

¶ 44     Also, to the extent that defendant makes a nonjurisdictional due process argument that the trial court erred in denying his request for a verified complaint, that argument fails as well. Defendant's "OBJECTION" stated that he "[would] not appear voluntarily and require[d] a valid court order and a verified criminal complaint with evidence introduced by [the State] showing an injury in fact ('*corpus delicti*') caused by [defendant]." Later in the filing, defendant declared rather boldly that the matter would be dismissed within 14 days if the trial court did not answer his question, "Where is the verified complaint sworn under threat of perjury from the [State]?" The foregoing statements read more like threats than "specific[ ] request[s]" (725 ILCS 5/111-3(b)

---

[2]The trial court told defendant that it had jurisdiction under the "statutes" of Illinois. However, "circuit court jurisdiction is conferred by the constitution and not by statute, except in the administrative review context" (*Cedzidlo v. Marriott International, Inc.*, 404 Ill. App. 3d 578, 582 (2010)), which is not the context here. Nonetheless, because our review is *de novo*, we may affirm the finding of subject-matter jurisdiction for different reasons than the trial court cited. See *Moore v. Pendavinji*, 2024 IL App (1st) 231305, ¶ 20.

(West 2022)) for a verified complaint. In any event, the record contains no proof of service of the "OBJECTION." Three weeks after defendant filed the "OBJECTION," the case was called for trial. The State said that it had only that day become aware of the "OBJECTION" when it was reviewing the electronic case file. Although defendant told the trial court that he had filed his written objection electronically and was advised that the State would receive notice, the State denied receiving proper notice, and the trial court "overrul[ed]" the "OBJECTION" before proceeding to trial. The record is clear that defendant failed to properly serve the State with the "OBJECTION." As the State notes, defendant cannot challenge the trial court's order based on his own failure to properly serve the State. See *People v. Smith*, 2017 IL App (3d) 150265, ¶ 17. Defendant has forfeited any objection to the State proceeding without a verified complaint. See *Pankey*, 94 Ill. 2d at 17. Alternatively, we find that the citations, which used the "Illinois Citation and Complaint" form approved by the Illinois Supreme Court, gave defendant adequate notice of the charges. See *Sellers*, 2015 IL App (4th) 140604-U, ¶ 20 (traffic tickets using the "uniform traffic citation" form "sufficiently set forth the offenses upon which [the] defendant was being charged"); *People v. Tammen*, 40 Ill. 2d 76, 78-79 (1968) ("Inasmuch as the Uniform Traffic Ticket is only used for misdemeanors, is written by an arresting officer rather than a State's Attorney and is generally written at the time the offense is committed, we believe that naming the offense and citing it is sufficient and will generally be understood by the person charged."). Despite his references to "due process," defendant fails to develop any argument that the citations did not comport with that constitutional norm. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (failure to support an argument with reasoned analysis and citation to authority results in forfeiture).

¶ 45    Next, we consider whether the trial court possessed personal jurisdiction over defendant. Unlike subject-matter jurisdiction, which, as noted, is invoked by the filing of a petition or complaint alleging the existence of a justiciable matter, personal jurisdiction is " 'derived from the actions of the person sought to be bound.' " *M.W.*, 232 Ill. 2d at 426 (quoting *Meldoc Properties v. Prezell*, 158 Ill. App. 3d 212, 216 (1987)).  A defendant "may consent to personal jurisdiction by his appearance, or he may have personal jurisdiction imposed upon him by effective service of summons." *Id.*  Once the trial court acquires personal jurisdiction over a party, it has the power to impose personal obligations on him, and that jurisdiction continues until all issues of fact and law in the case are determined.  *Id.*

¶ 46    The State points to *Stroud*, where the defendant was charged with driving without a valid license (625 ILCS 5/6-101 (West 2018)).  *Stroud*, 2020 IL App (3d) 190064, ¶ 3.  The defendant challenged the trial court's jurisdiction, and the court explained that the trial court "had personal jurisdiction over [the] defendant because he appeared in court after the traffic ticket complaint was filed." *Id.* ¶ 8.  In so holding, the *Stroud* court relied on *People v. Kleiss*, 90 Ill. App. 3d 53, 55 (1980), which stated that jurisdiction over the person of the accused is acquired when he appears personally before the court.  *Stroud*, 2020 IL App (3d) 190064, ¶ 8.

¶ 47    As in *Stroud* and *Kleiss*, the trial court in this case had personal jurisdiction over defendant once he appeared in court in response to the traffic citations.  Indeed, it was defendant who filed a motion to "[a]dvance court date" from September 23, 2024, to September 20, 2024, and he appeared in court on the latter date.  He thereafter appeared on November 1 and December 9, 2024. Although defendant purported to file a "special appearance" on September 17, 2024, to preserve a jurisdictional challenge, his physical presence in court three days later indisputably conferred personal jurisdiction over him.  See *People v. Bliss*, 44 Ill. 2d 363, 369 (1970) (even an illegal

arrest does not preclude the trial court from obtaining personal jurisdiction over the defendant in a criminal case).

¶ 48     Finally, as to the trial court's treatment of jurisdiction generally, we note defendant's comment that, when jurisdiction is "formally challenged, the burden shifts to the court to establish, on the record, that it has both subject matter and personal jurisdiction before proceeding." As we have explained, the trial court addressed defendant's jurisdictional objections. The record clearly shows that the trial court had both subject-matter jurisdiction over the proceeding and personal jurisdiction over defendant.

¶ 49                    B. Sufficiency of the Evidence

¶ 50     Last, we address defendant's argument that he was not found guilty of the traffic offenses beyond a reasonable doubt. The due process clause of the fourteenth amendment to the United States Constitution requires that a defendant may not be convicted in a state court except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which the defendant is charged. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). When reviewing a challenge to the sufficiency of the evidence, we consider whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* "When considering a challenge to a criminal conviction based upon the sufficiency of the evidence, our function is not to retry the defendant." *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). In other words, when reviewing the evidence, we will not substitute our judgment for that of the trier of fact. *Id.* Rather, "[t]he weight to be given witnesses' testimony, the witnesses' credibility, and the reasonable inferences to be drawn from the evidence, are all the responsibility of the fact finder." *People v. Milka*, 211 Ill. 2d 150, 178 (2004).

¶ 51    According to defendant, "the record is devoid of sufficient evidence showing that a legally cognizable crime occurred," and "the prosecution failed to present evidence sufficient to establish that an actual crime occurred." "There is either a complete absence of an essential element (such as intent, *actus reus*, or jurisdiction), or the acts proven do not amount to a crime under the law."

¶ 52    Defendant fails to cite the record or incorporate the trial evidence into his argument. Our supreme court rules provide that contentions in appellate briefs must be supported by citations to the record and reasoned analysis, and contentions not so developed are forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Defendant's *pro se* status does not excuse him from compliance with these briefing requirements. See *Litwin v. County of La Salle*, 2021 IL App (3d) 200410, ¶ 3. Although we would be justified in finding defendant's argument forfeited, we will briefly address the merits.

¶ 53    As to the charge of driving while license revoked, section 6-303(a) of the Vehicle Code (625 ILCS 5/6-303(a) (West 2022)) provides that

> "any person who drives or is in actual physical control of a motor vehicle on any highway of this State at a time when such person's driver's license, permit, or privilege to do so or the privilege to obtain a driver's license or permit is revoked or suspended as provided by this Code *** shall be guilty of a Class A misdemeanor."

¶ 54    At trial, the State established all elements of the offense through Smith's testimony, his body camera video, and the documentary evidence. Smith testified that he was dispatched to a residence on South 8th Street in the Village of Kirkland and observed a gold GMC Acadia parked on the street in front of the residence. Defendant was sitting behind the wheel of the Acadia. When Smith was asked if "there [were] keys in the ignition of the vehicle," he answered, "They were there with the vehicle, yes." When defendant exited the Acadia, there was a "dinging sound,"

which, Smith explained, "[t]ypically" means that the keys are in the vehicle's ignition. This evidence established that defendant was in "actual physical control" of the Acadia. See *City of Naperville v. Watson*, 175 Ill. 2d 399, 402 (1997) ("A person need not drive to be in actual physical control of a vehicle, nor is the person's intent to put the car in motion relevant to the determination of actual physical control. [Citation.] The issue of actual physical control is determined on a case-by-case basis giving consideration to factors such as whether the motorist is positioned in the driver's seat of the vehicle, has possession of the ignition key[,] and has the physical capability of starting the engine and moving the vehicle."). Also, based on Smith's testimony that South 8th Street was a "public roadway," the State proved that defendant had actual physical control of the Acadia while it was on a "highway." See 625 ILCS 5/1-126 (West 2022) (defining "highway" as "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel or located on public school property[ ]"). Moreover, defendant's identification card showed a Naperville address, and defendant's ex-wife confirmed that defendant did not live with her at the Kirkland residence. Thus, as the State points out, it was reasonably inferable that, on the day of his arrest, defendant drove his vehicle on highways to arrive in Kirkland. See *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004) (the reviewing court must allow all reasonable inferences from the record in favor of the State). Finally, the State introduced a certified driving abstract from the secretary of state showing that, on the date defendant was arrested, his driving privileges had been revoked. See *People v. Younge*, 83 Ill. App. 3d 305, 309 (1980) (the legislature has mandated that the secretary of state shall maintain appropriate records of all licenses and permits refused, canceled, revoked, or suspended; and a certified copy from the secretary, maintained pursuant to statutory mandate,

- 21 -

under his signature and seal, is admissible into evidence). Thus, the State proved defendant guilty beyond a reasonable doubt of driving while license revoked.

¶ 55 Likewise, the State proved defendant guilty beyond a reasonable doubt of improper display of a license plate. Section 3-413(b) of the Vehicle Code (625 ILCS 5/3-413(b) (West 2022)) states that "every registration plate or digital registration plate shall at all times be securely fastened in a horizontal position to the vehicle *for which it is issued ***.*" (Emphasis added.)

¶ 56 Smith testified that, when he encountered defendant parked near the Kirkland residence, defendant was positioned behind the steering wheel of a gold GMC Acadia vehicle. When Smith ran the license plate of the Acadia, he learned that the registration had been issued for a vehicle that did not match the Acadia. Smith's testimony was sufficient to prove the elements of the offense.

¶ 57                                          III. CONCLUSION

¶ 58 For the reasons stated, we affirm the judgment of the circuit court of De Kalb County.

¶ 59 Affirmed.